## STONE v. UNITED STATES.

ERROR TO THE CIRCUIT COURT FOR THE NINTH CIRCUIT.

No. 265.　Submitted April 2, 1897. — Decided May 10, 1897.

The United States court in the District of Washington has jurisdiction of an action brought by the United States against a defendant, found there, to recover for timber unlawfully cut from lands of the United States in Idaho.

It is no defence against such action that the defendant was indicted criminally for cutting such timber and was acquitted.

The ruling of the court about the challenges are without merit.

The provision in the act of March 3, 1875, c. 152, that the railroad companies therein provided for have "the right to take from the public lands adjacent to the line of said road material," etc., means lands in proximity, contiguous to, or near the road.

As between the Government and a settler, the title to public land until the conditions of the law are fulfilled remains in the United States, but in the meantime if the settler is engaged in improving the land as required by law and disposes of any surplus timber without intent to defraud the Government, and the purchaser buys the timber under the belief that there is no intent or purpose to defraud the Government, the sale is lawful and the purchaser is protected.

The fact that claimants to lands under the homestead and preëmption laws after occupation for a time abandon the lands is not alone proof that they intended to defraud the Government, although in the meantime they have cut and sold the timber from the lands during the occupation, but the jury should judge of the intent of the parties so acting by all the circumstances surrounding each case, and if these circumstances satisfy the jury that claimants of the land were acting in good faith at the time they sold the timber, and the purchaser had no reasonable ground to believe otherwise, then such sale would be lawful.

A general verdict is not a nullity by reason of its being received or recorded on Sunday.

THE case is stated in the opinion.

*Mr. C. W. Bunn* and *Mr. John R. McBride* for plaintiff in error.

*Mr. Solicitor General* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought in the District Court of the United States for the District of Washington, Eastern Division, to recover the reasonable value of certain timber and railroad ties manufactured from trees alleged to have been unlawfully cut by the defendant Stone from certain lands in Idaho of which, it was averred, the United States was the owner.

The answer put the United States upon proof of all the material allegations of the complaint.

But the defendant made two special defences —

1. That at a term of the United States District Court for the District of Idaho, held in April, 1891, the trespasses and wrongs complained of were presented by the United States to the grand jury for investigation, and such proceedings were then and there taken that the grand jury returned into court true bills of indictment, in which each and all of the wrongs and trespasses complained of herein were included; that the defendant was charged thereby with the commission of an offence against the statutes, forbidding the cutting or removal of timber from the lands of the United States; that on all the charges involving the acts of the defendant as set forth in the complaint filed herein, he was tried and acquitted and discharged therefrom by the judgment of that court; and that judgment was duly entered against the Government, " the issues therein being the same as are now presented in this action, and were each and all determined and adjudged in this defendant's behalf." The defendant, therefore, alleged that the issues tendered by the plaintiff herein have been heard, tried and adjudged for defendant and against the plaintiff by a court of competent jurisdiction, and that such judgment and determination precluded the maintenance of this suit.

2. That between the dates mentioned in the complaint, to wit, between the months of August, 1888, and November, 1890, he had contracts with various customers for supplies of railroad ties and timber for the manufacture of lumber at points along the line of the Northern Pacific Railroad Company in the State of Washington, and adjacent to the region mentioned in the complaint; that he procured his supplies of timber for the purposes aforesaid from lands embraced in the grant made by acts of Congress passed to aid in the construction of the Northern Pacific Railroad, and by contracts with that company; and that at no time did he cut timber on any lands except such as belonged to that company; that during said time he purchased from other parties, who delivered ties and timber suited for lumber on the railroad, both ties and timber not cut by himself, for which he paid the market price, and which were either cut from the railroad lands or were lawfully cut by the parties who sold and delivered them to him; that no part or portion thereof were cut or taken from lands of the United States, or were unlawfully cut or taken from any lands; that the railroad ties so purchased from other parties, and which were not cut by himself from the lands of the railroad company, were for the use of and were used in the construction of the Spokane and Palouse Railway Company and the Central Washington Railway Company's railroads, respectively, both corporations being organized and constructing their roads under and in compliance with grants made by the act of Congress of March 3, 1875, authorizing the use of timber, etc., for construction to be taken from the public lands of the United States; and that the taking for such purpose was not unlawful, but was by authority of law.

The defence based on the criminal prosecution in the United States District in Idaho was adjudged on demurrer to be insufficient in law.

The United States also brought an action against John H. Stone, Edward Noonan and W. G. Kegler, as partners doing business under the name of the Spokane Fuel Company, to recover the value of 3545 cords of wood alleged to have been

made from trees unlawfully cut from the public lands of the United States in the same State, and to have been unlawfully converted and disposed of by the defendants to their own use. Noonan answered denying each and every allegation of the complaint. Stone answered separately, and alleged that " he was indicted upon a charge of cutting timber unlawfully from the same lands and premises, upon which the alleged trespasses complained of in this action are founded, at the April term, 1891, of the United States District Court for the District of Idaho; that he was thereafter arrested on that indictment and appeared in said court; that such proceedings were afterwards had, a judgment was duly given and rendered in favor of the defendant, and he has been fully acquitted and discharged of said offence and of said trespass thereby." That judgment was pleaded in full discharge of the plaintiff's cause of action and in bar of all right of action on account thereof. As further special defence, Stone denied that the defendants were or had ever been partners in any business. The defence based upon the indictment, trial and judgment referred to was on demurrer adjudged to be insufficient in law. Stone then filed an answer denying each and every allegation of the complaint. Noonan denied all the allegations of the complaint. Kegler was not served with process and did not appear.

The two actions were tried before the same jury, having been previously consolidated by order of court. In the first case there was a verdict and judgment in favor of the United States against Stone for $19,000. In that case the jury, in answer to special questions propounded by the court, stated that Stone had received saw-logs unlawfully taken from the lands described in the complaint, and that $15,000 were awarded as damages on that account. They also stated, in response to a special question put by the court, that Stone had received railroad ties unlawfully taken from the lands, and that $4000 were awarded on that account. In the case against Stone, Noonan and Kegler, as partners, there was a verdict against Stone for $3000, but the judgment was arrested and the verdict set aside.

The judgment against Stone for $19,000 was affirmed by the Circuit Court of Appeals. 29 U. S. App. 32.

1. It is contended in behalf of Stone that as the lands from which the trees were alleged to have been unlawfully cut are in Idaho, the action is local to that State, and the District Court of the United States for the District of Washington was without jurisdiction. *Ellenwood* v. *Marietta Chair Co.*, 158 U. S. 105, is cited as an authority for this proposition. But that case proceeded upon the theory that the allegations of the petition, at the time it was tried, presented a single cause of action, in which the trespass upon the land was the principal thing, and the conversion of the property was incidental only; and, therefore, that the entire cause of action was local. In the present case the petition, it is true, avers that the United States was the owner of the lands from which the trees were cut, but the gravamen of the action was the conversion of the lumber and the railroad ties manufactured out of such trees, and a judgment was asked, not for the trespass, but for the value of the personal property so converted by the defendant. The description in the petition of the lands and the averment of ownership in the United States were intended to show the right of the Government to claim the value of the personal property manufactured from the trees illegally taken from its lands. Although the Government's denial of the ownership of the land made it necessary for it to prove its ownership, the action in its essential features related to personal property, was of a transitory nature, and could be brought in any jurisdiction in which the defendant could be found and served with process. And a suit could have been brought to recover the property wherever it could be found. In *Schulenberg* v. *Harriman*, 21 Wall. 44, 64, it was said: "The title to the land remaining in the State, the lumber cut upon the land belonged to the State. Whilst the timber was standing it constituted a part of the realty; being severed from the soil its character was changed; it became personalty, but its title was not affected; it continued as previously the property of the owner of the land, and could be pursued wherever it was carried. All the remedies were open to the owner which the

law affords in other cases of the wrongful removal or conversion of personal property." If a suit like this cannot be maintained, then persons depredating on the public lands may escape civil liability by simply removing from the State in which the depredation occurred; whereby the Government would be compelled to rely altogether upon a criminal prosecution in which it could not succeed except by proving the guilt of the defendant beyond all reasonable doubt.

2. The indictment against Stone in the Circuit Court of the United States for the District of Idaho charged that he unlawfully, wilfully and feloniously cut and removed and caused and procured to be cut and removed from the lands described fifty thousand timber trees growing on such lands, such trees being the property of the United States. It was based upon § 2461 of the Revised Statutes, which provides as follows: "If any person shall cut, or cause or procure to be cut, .or aid, assist, or be employed in cutting, or shall wantonly destroy, or cause or procure to be wantonly destroyed, or aid, assist, or be employed. in wantonly destroying any live oak or red cedar trees, or other timber standing, growing or being on any lands of the United States, which, in pursuance of any law passed, or. hereafter to be passed, .have been reserved or purchased for the use of the United States, for. supplying or furnishing therefrom timber for the Navy of the United States; or if any person shall remove, or cause or procure to be removed, or aid, or assist, or be employed in removing from any such lands which have been reserved or purchased, any live oak or red cedar trees, or other timber, unless duly authorized so to do, by order, in writing, of a competent officer, and for the use of the Navy of the United States; or if any person shall cut, or cause or procure to be cut, or aid, or assist, or be employed in cutting any live oak or red cedar trees, or other timber on, or shall remove, or cause, or procure to be removed, or aid, or assist, or be employed in removing any live oak or red cedar trees or other timber, from any other lands of the United States, acquired, or hereafter to be acquired, with the intent to export, dispose of, use, or employ the same in any manner whatsoever, other than for the use of the Navy of

the United States; every person shall pay a fine not less than triple the value of the trees or timber so cut, destroyed or removed, and shall be imprisoned not exceeding twelve months."

Did the court below err in adjudging that the defence in this action based upon an acquittal of the criminal charge was insufficient in law?

In our opinion the record of the criminal proceedings in the court in Idaho was not evidence to establish or disprove any of the material facts involved in the civil action.

In support of the contrary view counsel have cited *Coffey* v. *United States*, 116 U. S. 436, 443, 444. That was a libel on behalf of the Government, in the Circuit Court of the United States for the District of Kentucky, against certain personal property as being *forfeited* to the United States *on account of the violation of certain statutes*. It contained three counts, based, respectively, on §§ 3257, 3450 and 3453 of the Revised Statutes, Title, "Distilled Spirits." Coffey filed a claim to most of that property, as well as an answer to the information, in which he denied the allegations of each count. He made defence also on these specific grounds: That before the institution of the proceedings for forfeiture of the personal property, a criminal information was filed against him in the same court, the counts of which information were based upon §§ 3256, 3257, 3296, 3450 and 3453 of the Revised Statutes, or on some one or more of them; that such counts contained the same charges, in substance and effect, and embraced the same matters, things and frauds, that were set out and charged in the libel against the personal property therein described; and that upon the trial of the criminal information he was found not guilty, and by the judgment of the court was acquitted of the charges of fraud and attempts at fraud therein alleged, which were the same frauds as were alleged in the libel. To this part of the answer a demurrer was sustained upon the ground that the facts stated were not sufficient to constitute a defence. But this court held that as the demurrer to the answer admitted that the fraudulent acts and attempts to defraud, alleged in the criminal information and covered by the verdict

and judgment in the criminal case, embraced all the acts, attempts and intents averred in the libel for the forfeiture of Coffey's personal property, the judgment of acquittal in the criminal case was a bar to the proceeding by libel. This court said: "Where an issue raised as to the existence of the act or fact denounced has been tried in a criminal proceeding, instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person, on the subsequent trial of a suit *in rem* by the United States, where, as against him, the existence of the same act or fact is the matter in issue, as a cause for the forfeiture of the property prosecuted in such suit *in rem*. It is urged as a reason for not allowing such effect to the judgment that the acquittal in the criminal case may have taken place because of the rule required to be proved beyond a reasonable doubt, and that, on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States in the suit *in rem*. Nevertheless, the fact or act has been put in issue and determined against the United States; and all this is imposed by the statute, as a consequence of guilt, is a punishment therefor. There could be no new trial of the criminal prosecution after the acquittal in it; and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant. When an acquittal in a criminal prosecution in behalf of the Government is pleaded, or offered in evidence, by the same defendant, in an action against him by an individual, the rule does not apply, for the reason that the parties are not the same; and often for the additional reason, that a certain intent must be proved to support the indictment, which need not be proved to support the civil action. But upon this record, as we have already seen, the parties and the matter in issue are the same."

After referring to the case of *Gelston* v. *Hoyt*, 3 Wheat. 246, — in which it was adjudged that a sentence of acquittal, accompanied by a denial of a certificate of probable cause, in a proceeding by libel against a vessel for an alleged offence, was

conclusive evidence that no forfeiture was incurred, and that the same question could not be reëxamined in an action of trespass against the collector and surveyor for seizing the vessel, — the court said : "This doctrine is peculiarly applicable to a case like the present, where, in both proceedings, criminal and civil, the United States are the party on one side and this claimant the party on the other. The judgment of acquittal in the criminal proceeding ascertained that the facts which were the basis of the proceeding, and are the basis of this one, and which are made by the statute the foundation of any punishment, personal or pecuniary, did not exist. This was ascertained once for all, between the United States and the claimant, in the criminal proceeding, so that the facts cannot be again litigated between them, as the basis of any statutory punishment denounced as a consequence of the existence of the facts. This is a necessary result of the rules laid down in the unanimous opinion of the judges in the case of *Rex* v. *Dutchess of Kingston*, 20 Howell's State Trials, 355, 538, and which were formulated thus: The judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or, as evidence, conclusive, between the parties, upon the same matter, directly in question in another court; and the judgment of a court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive upon the same matter, between the same parties, coming incidentally in question in another court for a different purpose. In the present case the court is the same court, and had jurisdiction, and the judgment was directly on the point now involved, and between the same parties."

We are of opinion that the present case is not covered by. the decision in *Coffey* v. *United States*. The judgment in that case was placed distinctly upon the ground that the facts ascertained in the criminal case, as between the United States and the claimant, could not be "again litigated between them, *as the basis of any statutory punishment* denounced as a consequence of the existence of the facts." In the *Coffey case* there was no claim of the United States to property, except as the result of forfeiture. In support of its conclusion, the court

referred to *United States* v. *McKee*, 4 Dill. 128, observing that the decision in that case was put on the ground "that the defendant could not be twice *punished* for the same crime, and that the former conviction and judgment was a bar to the suit *for the penalty*."

The present action is unlike that against Coffey. This is not a suit to recover a penalty, to impose a punishment, or to declare a forfeiture. The only relief sought here is a judgment for the value of property wrongfully converted by the defendant. The proceeding by libel against Coffey, although civil in form, was penal in its nature, because it sought to have an adjudication of the forfeiture of his property for acts prohibited. It was, as we have seen, a case in which a punishment, denounced by statute, was sought to be inflicted as a consequence of the existence of facts that were in issue and had been finally determined against the United States in a criminal proceeding. The nature of the proceeding against Coffey, and the scope of the decision in that case, were recognized in *Boyd* v. *United States*, 116 U. S. 616, 634, where the court said: "As showing the close relation between the civil and criminal proceedings on the same statute in such cases, we may refer to the recent case of *Coffey* v. *United States*, in which we decided that an acquittal on a criminal information was a good plea in bar to a civil information for the *forfeiture* of goods, arising upon the same acts. As, therefore, suits for penalties and forfeitures incurred by the commission of offences against the law, are of this quasi criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the Constitution, and of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself; and we are further of opinion that a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure — and an unreasonable search and seizure — within the meaning of the

Fourth Amendment. Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence, and effects their substantial purpose." Again, in *Lees* v. *United States*, 150 U. S. 476, 480, which was an action to recover a penalty for importing an alien under contract to perform labor, this court said: "This, though an action civil in form, is unquestionably criminal in its nature, and in such a case a defendant cannot be compelled to be a witness against himself."

In the present case the action against Stone is purely civil. It depends entirely upon the ownership of certain personal property. The rule established in *Coffey's case* can have no application in a civil case not involving any question of criminal intent or of forfeiture for prohibited acts, but turning wholly upon an issue as to the ownership of property. In the criminal case the Government sought to punish a criminal offence, while in the civil case it only seeks in its capacity as owner of property, illegally converted, to recover its value. In the criminal case his acquittal may have been due to the fact that the Government failed to show, beyond a reasonable doubt, the existence of some fact essential to establish the offence charged, while the same evidence in a civil action brought to recover the value of the property illegally converted might have been sufficient to entitle the Government to a verdict. Not only was a greater degree of proof requisite to support the indictment than is sufficient to sustain a civil action; but an essential fact had to be proved in the criminal case, which was not necessary to be proved in the present suit. In order to convict the defendant upon the indictment for unlawfully, wilfully and feloniously cutting and removing timber from lands of the United States, it was necessary to prove a criminal intent on his part, or, at least, that he knew the timber to be the property of the United States. *Regina* v. *Cohen*, 8 Cox C. C. 41; *Regina* v. *James*, 8 Car. & P. 131; *United States* v. *Pearce*, 2 McLean, 14; *Cutter* v. *State*, 36 N. J. Law, 125, 126. But the present action for the conversion of the timber would be supported by proof that it was in fact

the property of the United States, whether the defendant knew that fact or not. *Wooden-ware Co.* v. *United States,* 106 U. S. 432. An honest mistake of the defendant as to his title in the property would be a defence to the indictment, but not to the civil action. Broom's Leg. Max. (5th ed.) 366, 367. It cannot be said that any fact was conclusively established in the criminal case, except that the defendant was not guilty of the public offence with which he was charged. We cannot agree that the failure or inability of the United States to prove in the criminal case that the defendant had been guilty of a crime, either forfeited its right of property in the timber or its right in this civil action, upon a preponderance of proof, to recover the value of such property.

3. As heretofore stated, the two actions were consolidated by an order of the trial court. After twelve jurors were selected (the challenges for cause having been determined) the court directed the respective parties to proceed with their peremptory challenges. Thereupon Stone and Noonan, claiming that they were entitled to challenge peremptorily, in each case, three jurors, and announcing that they desired to challenge Giffin in the case against Stone, Noonan and Kegler, peremptorily challenged him as a juror, although they had already challenged three jurors in the consolidated cases. The court denied the challenge, and the defendants excepted. This ruling of the court is now assigned for error. But there is no merit in the objection. The case here is the one against Stone alone. In that case the defendant had the benefit of the three peremptory challenges made before the challenge of Giffin. In the other case the judgment was arrested and the verdict was set aside. If the court committed any error in not allowing the challenge of Giffin in the case against Stone, Noonan and Kegler, that error did not prejudice Stone in the present case.

4. By the act of March 3, 1875, 18 Stat. 482, c. 152, Congress granted the right of way through the public lands of the United States to any railroad company duly organized under the laws of any Territory, except in the District of Columbia, or by the Congress of the United States, which shall have

filed with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of the road; "also the right to take from the public lands adjacent to the line of said road, material, earth, stone and timber necessary for the construction of said railroad."

At the trial the defendant offered as evidence the appointment of the plaintiff in error, John H. Stone, as agent of the Central Washington Railroad Company and of the Spokane and Palouse Railway Company, claiming that said corporations having been organized under the laws of the Territory of Washington and having filed their articles of incorporation and proofs of organization with the Department of the Interior, which had approved the same, were authorized by the laws of the United States to take the timber included in this action, and such taking by them through their agent was not unlawful, the proof showing "that the ties which are sued for in this action were used by the said railroad companies in the construction of their said roads." This evidence was excluded and its exclusion is assigned for error. It appears from the record, as stated in the opinion of the Circuit Court of Appeals, that no timber fit for ties was found along the line of either of these roads; that both of them penetrated a barren region almost entirely destitute of timber, and that the timber was cut from lands along the line of the Northern Pacific Railroad about fifty miles distant from the eastern end of the other roads, which was the nearest point where available timber could be found.

The trial court, in its charge, thus interpreted the above act of 1875 : " The act of Congress under which this claim is made does not undertake to provide the materials necessary for the building of railroads. It does not provide that if there is not any timber convenient, or within a convenient distance to the building and construction of a new railroad, that the railroad company has a right to require the United States to provide them with material, or go upon distant lands and procure the material that they require. That is not the scope of the law, and so I have decided that adjacent lands

means lands in proximity, contiguous to or near to the road, and that lands so far distant from the railroad and mentioned as lands in Kootenai County, Idaho, where it is claimed that railroad ties were cut, were not adjacent lands within the meaning of the law. That takes the whole question and the whole subject-matter of that claim from your consideration and releases you from any consideration in regard to it.".

We concur with the Circuit Court of Appeals in adjudging this to be a sound interpretation of the act of 1875. It is substantially the view expressed in *Denver & Rio Grande Railroad* v. *United States*, 34 Fed. Rep. 838, 841, in which Mr. Justice Brewer said: "I certainly do not agree with the idea, which seems to be expressed elsewhere, that the proximity of the land is immaterial, or that Congress intended to grant anything like a general right to take timber from public land where it was most convenient. The grant was limited to adjacent lands, and I do not appreciate the logic which concludes that if there be no timber on adjacent lands, the grant reaches out and justifies the taking of timber from distant lands — lands fifty or a hundred miles away." Under this interpretation of the act of Congress, and under the facts of this case, it is clear that the timber was not taken from lands which, within the true meaning of that act, were adjacent to either of the roads in the construction of which it was used.

5. One of the principal matters contested at the trial was whether the lands were public lands of the United States in any sense that would entitle the Government to claim that it owned the timber taken from them. The defendant introduced evidence to show that certain individuals had acquired the lands under the laws of the United States, and were in the exercise of their rights when cutting timber from them.

Upon this general subject the court instructed the jury, in substance, that the United States was the primary source of title to all of the lands in the State of Idaho, and where individuals have acquired ownership they have done so by grant or conveyance from the Government; that in a case where there was no evidence of transfer from the United States of

title it is to be taken that the title is still in the United States; that as to all the lands in which the title is in the Government the timber and trees standing and growing on them are part of the land, the title of the United States to the trees being the same as its title to the soil; that when trees on such lands are cut down without authority of law the right of property in the timber after it is severed from the realty still remains in the Government, and if any one without license from the Government or without authority of law takes the timber from the land he commits a trespass against the Government; that no person can acquire title to the timber so cut by buying it from an individual, unless it appears that that individual in cutting and removing it from the lands had license or lawful authority to do so; that under the laws in force during the time referred to in the pleadings and evidence, any person desiring any part of the lands known as public lands must prove that it was for his own exclusive use and benefit and for the purpose of residing upon and cultivating it, thus carrying into effect the policy of the Government in giving public lands to the people who need them and would cultivate and use them, so as to cause the greatest benefit to the country; that any settler going upon a tract of land with that intention goes by invitation of the Government, and with the authority to improve the land and make it fit for use; that he is authorized to cut down the timber which he finds standing there (if it encumbers the ground) so far as was necessary to do so in order to make the land fit for cultivation; that any timber that he does so cut down in good faith and for the purpose of improving the land, he being a *bona fide* settler intending to acquire title in accordance with the laws, is not the property of the United States, but becomes his property after being so cut down, and that he may burn it up or he may sell it for money, and if he sells it under the conditions named the man who buys it from him gets a good title and is not required to pay the United States for it afterwards; that the converse of that proposition was true, and where a man cuts timber off the public lands, unless he is a *bona fide* settler intending to acquire title to the lands by

obedience to the laws of the United States, he does so unlawfully, and does not make himself the owner of the timber by cutting it; and that even a settler who takes up a claim on public lands intending to perfect his right to it, has no right, until he has perfected his claim, to cut the timber, except so far as it is necessary and reasonable to prepare so much of the lands for cultivation as he intends to cultivate.

The court proceeded in its charge: " A man of limited means who goes upon a claim and is able during the first year to cultivate only a few acres is only authorized to cut the timber off the few acres that he intends to cultivate and is able to cultivate. If he cuts down the timber off forty acres, it should be in pursuance to a definite plan that the plough shall follow the axe, and that the entire forty acres shall be put to use for the purpose of cultivation or in such manner as a farmer makes use of land that is tillable land. The balance of the timber on the 160 acres, if it is a timbered claim, a claim covered by timber, should remain as a preserve, a timber preserve, for the future benefit of the land, and should be removed only so fast as the settler finds it necessary to remove it in order to put in cultivation the lands he means to cultivate and intends to cultivate in good faith. But a man whose primary purpose is to cut the timber on a piece of land is no more authorized to go and cut that timber by reason of his having filed in the land office a declaration of his intention to take the land under the preëmption law than if he goes and cuts it without filing any declaration. Unless the declaration is an honest declaration and is supported by compliance with the requirements of the law, by making a home upon the land, actually living upon it and actually proceeding in the regular way by regular process of improving the land and putting it in cultivation, and until he has perfected his right by full compliance with the law, he has no right to cut down and sell the timber on other portions of the land which he is not intending to immediately put into cultivation. As between the Government and the settler, the title to the land until the conditions of the law are fulfilled remains in the United States,

but in the meantime if the settler is engaged in improving the land as required by law and disposes of any surplus timber without intent to defraud the Government, and the purchaser buys the timber under the belief that there is no intent or purpose to defraud the Government, the sale is lawful and the purchaser is protected. The fact that claimants to lands under the homestead and preëmption laws after occupation for a time abandon the lands is not alone proof that they intended to defraud the Government, although in the meantime they have cut and sold the timber from the lands during the occupation, but the jury should judge of the intent of the parties so acting by all the circumstances surrounding each case, and if these circumstances satisfy the jury that claimants of the land were acting in good faith at the time they sold the timber, and the purchaser had no reasonable ground to believe otherwise, then such sale would be lawful."

It is not, in our judgment, necessary to add anything to this clear and satisfactory statement of the law as applicable to the matters referred to by the trial court. They are in accord with the views of this court as expressed in *Shiver* v. *United States*, 159 U. S. 491, 497, 498. See also *United States* v. *Cook*, 19 Wall. 591. The objections made at the trial (and repeated here) to what was said to the jury on this part of the case were not well taken. They could not be sustained without encouraging depredations upon the public lands under the guise of establishing settlements upon them in accordance with the liberal policy of the Government.

6. The only other question that we deem necessary to consider is that presented by the assignment of error, which states that the court erred " in giving any instructions to the jury on Sunday, because it had no power to do any judicial act save to receive the verdict and discharge the jury, and all such instructions given to the jury were without authority."

The facts upon which this assignment was made were these: The jury retired on Saturday, April 22, 1893, to consider of their verdict. On the succeeding day, Sunday, in

conformity with the order of the judge, without any request by the jury and without any consent asked or given by the defendant, they came into court, both parties being present by counsel. The court then read the special questions to which reference has been made in the statement of this case, and requested the jury to answer them in addition to their general verdict. Although asked by counsel to do so, the court declined to instruct the jury upon matters covered by its charge of the previous day. A juror having inquired whether the jury were allowed to sign a verdict on Sunday, the court replied: "Yes; and when you have come to an agreement, send for me, and I will receive your verdict." The verdict was returned into open court on the same day. On the succeeding day the defendant asked to have the benefit of an exception to the jury having been sent out and to the receiving of the verdict on Sunday. The court did not directly allow the exception, but expressed its willingness to sign a bill of exceptions, reciting facts as they occurred. The judgment on the verdict for $19,000 was entered on the Friday succeeding the day on which the verdict was returned.

There is no statute of the United States making Sunday *dies non juridicus.* But by the statutes of the State of Washington, where this case was tried, it is provided that the common law, so far as it was not inconsistent with the Constitution and laws of the United States, or the State of Washington, nor incompatible with the institutions and conditions of society in that State, shall be the rule of decision in all its courts. 2 Hill's Anno. Stat. and Codes, § 108. This statute is applicable in the courts of the United States sitting in the State of Washington, and furnishes a rule of decision in trials at common law in cases where it applies. Rev. Stat. § 721. Tested by the principles of the common law, was the judgment under review void because the verdict of the jury was received by the court on Sunday? Whatever may be said as to the right of the court on Sunday to have delivered to the jury special questions to be answered by them, the general verdict was not a nullity by reason of its being

received or recorded on Sunday. While many cases hold that a *judgment* entered on Sunday is absolutely void, the receiving and entering of a verdict cannot be questioned upon the ground that those things occurred on Sunday. It was substantially so held in *Ball* v. *United States*, 140 U. S. 118, 131, citing *Mackalley's case*, 5 Reports, 111; *Swann* v. *Broome*, 3 Burrows, 1595; *Baxter* v. *People*, 3 Gilman, 368, 386; and *Chapman* v. *State*, 5 Blackford, 111. See also *Pearce* v. *Atwood*, 13 Mass. 324; *Frost* v. *Hull*, 4 N. H. 153, 156; *Nabors* v. *The State*, 6 Alabama, 200, 201; *Story* v. *Elliot*, 8 Cowen, 27; *Ex parte White & Perque*, 15 Nevada, 146; *Hoghtaling* v. *Osborn*, 15 Johns. 119.

Having noticed all the matters in the record that we deem important, and perceiving no error of law to the prejudice of the substantial rights of the defendant, the judgment is

*Affirmed.*