[No. 29780.   Department Two.   August 30, 1946.]

RICHARD LEE YOUNG, *Appellant*, v. THE CITY OF SEATTLE, *Respondent.*[1]

[1]Reported in 172 P. (2d) 222.

*Leon L. Wolfstone,* for appellant.

*A. C. Van Soelen, John A. Homer,* and *E. A. Swift, Jr.,* for respondent.

ROBINSON, J.—This action arose out of a collision between a passenger automobile driven by the plaintiff, Richard Lee Young, and a bus operated by the city of Seattle as a unit of its municipal transit system. The collision occurred at the intersection of Broad street and First avenue at about one-thirty a. m. of a clear July night. The plaintiff was traveling in a westerly direction on Broad street, an arterial fifty-four feet in width. The bus was traveling in a northerly direction on First avenue, which is not an arterial. It has a width of fifty-two feet. There was no obstruction on the south-westerly corner of the intersection which would prevent either driver from observing the approach of the other.

The case was tried by the court without a jury. The drivers of the respective vehicles were the only witnesses who gave any substantial testimony as to the collision itself, and their accounts are in sharp conflict. The woman driver of the bus testified that she came to a full stop before entering the arterial, and her testimony in this respect was corroborated by another bus driver whose vehicle was closely following hers. There is the usual mass of testimony concerning distances, skid marks, and how long it takes to stop a car while going at different rates of speed, and so forth. To set this out in an opinion would be of no profit to anyone.

At the close of all the evidence, the trial judge said:

"Well, gentlemen, I have had a great many of these automobile accidents to solve, and I have had large experience

in driving automobiles, and I think I am prepared to decide this case now.

"Suppose that I don't give this woman driver's testimony any credit at all; and for the purpose of this decision I won't give it any credit, not that I can say I don't believe it; but I will not base my decision on her testimony at all, except insofar as it is proven."

He then proceeded to carefully and thoroughly analyze all of the evidence as to time, distance, and every other circumstance surrounding the collision, and concluded that, although the woman driver of the bus may not have been altogether free from fault, the plaintiff was justly chargeable with contributory negligence.

"So, charge her with all the negligence you want,—and I consider her testimony was not perfectly satisfactory,—you can't escape the absolute conclusion that he was guilty of contributory negligence, and if he was going over that same ground a thousand times, that same country, he would never do again just what he did this time. He was guilty of contributory negligence because he didn't see what was perfectly obvious to him, and what he should have seen."

Plaintiff promptly filed a motion for judgment notwithstanding the oral opinion pronounced at the close of the trial and, in the alternative, for a new trial. These motions were argued and denied. In due course, the trial court made findings of fact, of which finding No. 3 is the most material:

"That on said date at approximately the hour of 1:30 A. M., the plaintiff was operating his car in a westerly direction on Second Avenue toward First Avenue on said arterial highway and had a collision, striking one of the trolley coaches of the defendant at a point of collision approximately 13 feet south of the north line of Broad Street; that it was found that the trolley being operated by the defendant had made the stop on arriving at Broad Street and from the point of the stop to the point at which the said trolley was struck, was a distance of 92 feet; that the automobile which was owned and operated by the plaintiff, Richard Lee Young, went a distance of 120 feet from the point at which the defendant stopped, did see the defendant approaching said stop and while traveling at the rate of speed of 20 to 25 miles per hour, traveled 125 feet to the point of collision.

"The evidence shows that the defendant trolley coach

operator failed to stop and failed to avoid the collision. It further shows that the plaintiff traveling at a speed which is shown would have passed the point of collision by the time the defendant operator had made the stop and traveled 92 feet to the point of collision and was, therefore, guilty of primary negligence.

"The evidence shows that the plaintiff was going a great deal faster than he claimed he was and that he was farther up the street than the 120 feet he claimed he was."

When the findings are studied in connection with the oral opinion delivered by the trial judge at the close of all the evidence, it clearly appears that he came to the conclusion that the bus driver did not fail to stop before entering the intersection, as charged by the plaintiff, and, while she was, perhaps, at fault in not stopping and yielding the right of way after she entered the intersection, that the real and primary cause of the accident was plaintiff's speed, in view of what he saw or should have seen.

On appeal, the following errors were assigned:

"1. The court erred in finding appellant guilty of contributory negligence.

"2. The court erred in filing findings of fact and conclusions of law finding appellant guilty of contributory negligence, when there is no evidence to support such findings.

"3. The court erred in failing to find the question of contributory negligence res judicata when certified copy of previous trial was offered in evidence.

"4. The court erred in refusing introduction of certified copy of proceedings and judgment of dismissal in previous trial between same parties, wherein appellant was exonerated of negligence.

"5. The court erred in denying appellant's motion for judgment notwithstanding the memorandum opinion.

"6. The court erred in denying appellant's motion for new trial."

Of these, 1, 2, and 5 may be answered by inquiring whether the judgment is right or wrong, and it is apparent from the record that the answer to that question depends very largely upon which one of the drivers gave the most truthful account of the collision. Manifestly, the trial judge was in a much better position to determine that than we

can possibly be. There is no reasonable standpoint from which we can hold that his decision is not supported by a preponderance of the evidence. These three assignments of error must, therefore, be rejected.

The three remaining assignments may be considered by inquiring whether the court erred in refusing to admit appellant's offered exhibit No. 5. If it did, a new trial must be ordered. Appellant contends that, if the exhibit had been admitted, the trial court would have been required to hold that the question of his negligence was *res judicata*. Offered exhibit No. 5 is certified as a full, true, and correct transcript of all docket entries relating to a certain case tried in the municipal court, entitled: "City of Seattle, Plaintiff, v. Richard Lee Young, Defendant." The entries are as follows:

"Complaint filed in writing, July 20, 1944.
"Charge, Sec. 45-1.
"Arresting Officers, O. J. Winsberg.
"Bail, $35.00.
"Continuances, July 20, 1944 to August 3, 1944 to August 17, 1944.
"Defendant Pleads, Not Guilty, August 17, 1945.
"Witnesses, O. J. Winsberg, Rubye Stovick for City. Richard Lee Young, Mrs. Lee Young for Defendant.
"The Court finds defendant, Dismissed."

■ The rejected exhibit would not in any event of itself establish *res judicata;* for it does not show what the defendant was charged with. It shows only: "Charge, Sec. 45-1." As to the meaning of that, we have no certain knowledge and no light whatever, except as is reflected by incidental statements of counsel in the case. It is recorded, on page 151 of the statement of facts, that appellant's counsel propounded the following question to a witness:

"Q. Did you make an attempt to contact them on August 17, at the time of the trial in the police court, *in which Mr. Young was tried as a drunken driver?*" (Italics ours.)

At another place in the record, appellant's counsel speaks of the charge as "negligent driving," and respondent's counsel speaks of the plaintiff as having been charged with "criminal negligence." Manifestly, it cannot be reasonably

contended that a dismissal of a charge of drunken driving would be *res judicata* of a civil negligence action. One does not have to be drunk to be guilty of actionable negligence. The city's answer consists wholly of denials and one affirmative defense, which read as follows:

"That the injury and damage, if any, sustained by the plaintiff occurred by reason of the negligence of the plaintiff, contributing thereto as the proximate cause thereof in that plaintiff failed to use his senses in approaching said street and failed to observe that which was open and apparent before him, a trolley coach traveling in a northerly direction on First Avenue and nearly had cleared the intersection of First Avenue and Broad Street."

Nor do we know with what species of criminal negligence appellant was charged. All the rejected exhibit tends to prove is that the city, in its governmental capacity, charged the appellant with some sort of petty crime, and that, upon trial, the action was dismissed. Does that fact prevent the city, when sued in its civil capacity as a proprietor of a transit system, from setting up the defense that the plaintiff was himself negligent?

The appellant relies principally upon the case of *Coffey v. United States*, 116 U. S. 436, 29 L. Ed. 684, 6 S. Ct. 437, decided in 1886. As we read the opinion in that case, Coffey was charged, in a criminal action, with an attempt to defraud the government of taxes on certain spirits distilled by him, and it was found that he had not done so. An action *in rem* was then brought by the United States to forfeit certain of his distillery property, on the ground that it had been used to defraud the government of taxes. The court held that the acquittal in the criminal case was *res judicata* as to the *in rem* action. The real reason for this holding is found in one sentence, which we quote from the opinion:

"But upon this record, as we have already seen, the parties and the matter in issue are the same."

Clearly, the issue in both of the cases was: Did Coffey defraud the government? We do not know what the issue was in the police court case, which is relied upon as *res judicata* by the defendant, but such information as we have

concerning it leads us to believe that it was not the same as that tendered by the city's affirmative defense, hereinabove quoted.

The appellant especially relies upon the following language in the opinion in the *Coffey* case:

"It is urged as a reason for not allowing such effect to the judgment, that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt, and that, on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States, in the suit *in rem. Nevertheless, the fact or act has been put in issue and determined against the United States;* and all that is imposed by the statute, as a consequence of guilt, is a punishment therefor. There could be no new trial of the criminal prosecution after the acquittal in it; and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant." (Italics ours.)

But, here again, it must be remembered that the same fact or act had been put in issue in the criminal case. In *Stone v. United States,* 167 U. S. 178, 42 L. Ed. 127, 17 S. Ct. 778, it is pointed out that, although the action in the *Coffey* case was *in rem,* it was, in its nature, a penal case, and it is said:

"The rule established in *Coffey's case* can have no application in a civil case not involving any question of criminal intent or of forfeiture for prohibited acts."

This action involves no question of criminal intent or of forfeiture for prohibited acts.

■ But even if the opinion in the *Coffey* case had not thus been limited by the later opinion in the *Stone* case, we would not apply it here. It is not contended, of course, that we are bound by the decisions of the supreme court of the United States on general questions of law, but only that they should be regarded as "persuasive" authority. We do not find the opinion in the *Coffey* case at all persuasive.

■ The offered exhibit at least showed that the case which was tried in the municipal court on August 17, 1945, was a criminal case. A criminal charge must be proven be-

yond a reasonable doubt. A charge of negligence in a civil case can be proven by a mere preponderance of the evidence. It, therefore, follows that one may be properly acquitted on a charge of criminal negligence and yet be properly held responsible for negligence in a civil case on the very same evidence. How, then, can the acquittal in the criminal case be *res judicata* in this action?

In this case, the respondent city printed, as an appendix in its brief, what purports to be the court's oral decision on the plaintiff's motion for judgment notwithstanding the decision. This, as its counsel must have well known, was never a part of the record. Appellant complains of this, and justly. He says, in part:

"In the circumstances we respectfully urge the court that respondent should be required to strike all of such matters from their brief prior to submission to this Honorable Court, and in the alternative the brief should be stricken."

This is not a very practical remedy. In such a situation, when the offending party prevails on the appeal, it is the usual custom to deny him costs for printing his brief. In this instance, the breach of the rules was flagrant and inexcusable, and caused the appellant additional expense.

The judgment appealed from is affirmed. No costs of any kind or character will be taxed in this court against the appellant.

BEALS, C. J., BLAKE and JEFFERS, JJ., concur.