UNITED STATES of America,
Plaintiff,

v.

PACKORP, INC., Scott Paper Company, S. D. Warren Company, Menasha Wooden Ware Corporation, American Excelsior Corporation, Hammermill Paper Co., Abitibi Corporation, Gordon B. Bonfield, Edgar W. Habighorst, Roman L. Suess, Charles G. Allen; Arthur F. Koller; James B. Watters; John N. Fields; John Hanson, and A. J. Auden, Defendants.

No. 4343.

United States District Court
W. D. Michigan, S. D.

Nov. 1, 1965.

Paul A. Owens, and Joseph J. O'Malley, Dept. of Justice, Washington, D. C., Harold D. Beaton, U. S. Atty., Grand Rapids, Mich., for plaintiff.

Bodman, Longley, Bogle, Armstrong & Dahling, by Louis F. Dahling, Detroit, Mich., Uhl, Bryant, Wheeler & Upham, by Gordon B. Wheeler, Grand Rapids, Mich., for defendants Abitibi Corp. and A. J. Auden.

Schiff, Hardin, Waite, Dorschel & Britton, by W. Donald McSweeney and William A. Montgomery, Chicago, Ill., Warner, Norcross & Judd, by Harold S. Sawyer, Grand Rapids, Mich., for defendants American Excelsior Corp. and Edgar W. Habighorst.

Hillman, Baxter & Hammond, by Douglas W. Hillman, Grand Rapids, Mich., Mortimer E. Graham, Robert J. Kilgore, Erie, Pa., for defendants Hammermill Paper Co. and John Hanson.

Warner, Norcross & Judd, by Harold S. Sawyer and Charles C. Lundstrom, Grand Rapids, Mich., for defendants Menasha Wooden Ware Corp., Roman L. Suess and James B. Watters.

Kirkland, Ellis, Hodson, Chaffetz & Masters, by E. Houston Harsha and John H. Morrison, Chicago, Ill., Varnum, Riddering, Wierengo & Christenson, by

F. William Hutchinson, Grand Rapids, Mich., for defendants Packorp, Inc., Gordon B. Bonfield and Arthur F. Koller.

Law, Fallon, Weathers & Richardson, by Francis X. Fallon, Grand Rapids, Mich., Covington & Burling, by Gerhard A. Gesell, Washington, D. C., Norman Heisman, Philadelphia, Pa., for defendants Scott Paper Co. and Charles G. Allen.

Nutter, McClennen & Fish, by John R. Hally, Boston, Mass., McCobb & Heaney, by Edward C. McCobb, Grand Rapids, Mich., for defendants S. D. Warren Co. and John N. Fields.

FOX, District Judge.

This is an action by the United States against the named defendants for violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1. The complaint filed July 11, 1962 charges a conspiracy to restrain price competition and to prevent competitors other than those allegedly involved in the claimed conspiracy from entering the pulpwood market.

The amended complaint filed February 7, 1964, alleges that defendants' paper mills located in the Lower Peninsula of Michigan consumed most of the wood produced for use as pulpwood in the Lower Peninsula of Michigan. It further alleges that the defendants combined and conspired to exchange information for the purpose and with the effect of restraining price competition among themselves, and prevented competition by others in the purchase of wood produced or used in the Lower Peninsula of Michigan.

The amended complaint additionally states that in furtherance of this claimed design, the defendants exchanged information regarding their projected needs and the prices being paid, and that these exchanges took place at various meetings between the defendants.

A criminal action was also filed in the case, and terminated in a court-directed judgment of acquittal against all defendants who had not been eliminated from the case on motion of the government.

Proceedings in the civil case were stayed pending the outcome of the criminal case.

The case is presently before the court on the motions of defendants American Excelsior Corporation and Hammermill Paper Co. for summary judgment.

Both motions are grounded on allegations that as to these individual defendants, the action is moot.

The answers of plaintiff United States of America to defendants' interrogatories establish the involvement of these two firms in the alleged conspiracy. Defendants do not deny the facts of these meetings; however, they do not admit that such meetings were in furtherance of any charged conspiracy.

Affidavits have been filed in support of the motions, and in addition, the parties rely upon the pleadings, interrogatories and answers thereto, oral arguments to the court, briefs, proposed findings of fact, and relevant portions of the record in United States v. Packaging Corporation of America, et al., Criminal No. 6885, Western District of Michigan.

The facts pertinent to this motion are comparatively brief.

This action was commenced on July 11, 1962. As to American Excelsior, it is claimed, and supported by affidavits, that at a special meeting of the Board of Directors on May 12, 1960, the determination was made to "phase out" the manufacturing operations of the Grand Rapids mill, their only mill in the Lower Peninsula of Michigan. This decision was gradually implemented, and by August 19, 1963, American Excelsior vacated the premises of its Grand Rapids mill.

American Excelsior had been served with a subpoena on March 28, 1962, to testify before a grand jury with respect to the matters involved in suit.

The affidavits affirm that the decision to gradually liquidate all manufacturing operations in Grand Rapids be-

cause of their unprofitable nature was made before notice of this suit was brought to the attention of this defendant.

The affidavits further state that American Excelsior has no intention of ever again establishing a mill in the Lower Peninsula of Michigan for the manufacture of excelsior or excelsior products there, nor has it any plan or intention of ever resuming the purchase of excelsior bolts (pulpwood) in the Lower Peninsula of Michigan.

Finally, since January 1, 1962, American Excelsior has not been a member of any association or organization of persons engaged in the purchase of excelsior bolts or pulpwood, nor has it paid dues of any officers or employees of such organization.

As to Hammermill Paper Co., the submitted affidavits show that the last meeting attended by a Hammermill representative at which price information was exchanged occurred in 1958, that Hammermill's pulp mill operations in Michigan ceased on September 15, 1963, with the close of its Watervliet pulp mill because it was no longer economical to operate, and that Hammermill does not contemplate the purchase of pulpwood in Michigan within the foreseeable future, if ever.

Both defendants, therefore, base their motions on abandonment, arguing that the illegal practices, if any, have been discontinued and that the injunction prayed for, if granted, would be punitive, since the affidavits establish that there is little likelihood of the defendants ever again entering the pulpwood market in the Lower Peninsula of Michigan.

Plaintiff's brief draws a basic factual dispute in the case, namely, whether or not the closing of the Michigan pulp mills of defendants is proof that no reasonable probability of future violations exists.

The court is unable, on the facts of this case, to agree with defendants' contentions as a basis for granting the mo-

tions and accordingly, they will be denied.

■ A case is not made moot simply by the voluntary cessation of allegedly illegal conduct. United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303; United States v. Trans-Missouri Freight Assoc., 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; and Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

However, if the defendants can show no reasonable expectation of resumption of the activity, the case may be moot. This burden is a heavy one. United States v. W. T. Grant Co., supra.

To recapitulate at this point, the facts relied upon by defendants are abandonment, lack of reasonable probability of resumption of the allegedly illegal practices, and the judgment of acquittal in the previous criminal action.

■ Although it is true that injunctions are not to be used as punitive measures, but only to prevent future violations, United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978; United States v. National Lead Co., 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed. 2077; · Hartford Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322, these motions are not aimed at injunctions, but at dismissal of the case before any hearing to determine whether or not the facts justify an injunction.

■ Abandonment alone, as stated above, is not sufficient to justify dismissal, since there may be a public interest in settling the question of whether or not the practices complained of are in fact illegal. United States v. Trans-Missouri Freight Assoc., supra; United States v. W. T. Grant Co., supra; Walling v. Helmerich & Payne, Inc., supra; see United States v. Aluminum Co. of America, 148 F.2d 416 (CCA 2, 1945).

It must also be demonstrated that there is no threat or probability of resumption. United States v. W. T. Grant

Co., supra; United States v. Oregon State Medical Society, supra; United States v. Central States Theater Corp., 187 F.Supp. 114; see United States v. Hart-Carter, 63 F.Supp. 982.

Thus, before defendants can argue that the issuance of an injunction in this suit would be punitive, and *a fortiori* that the motion for summary judgment should be granted, they must demonstrate to the satisfaction of the court one of two things: first, that the alleged activities were not violative of the antitrust laws, or second, that, assuming for the sake of argument that they were, there is no reasonable threat or probability of resumption.

■ In support of the former position, defendants rely upon the acquittal in the criminal action in this case. On this point, the following quotation from the opinion in United States v. National Association of Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007, is apropos. In that case, a conspiracy to fix commission rates was charged, and at the conclusion of the government's case defendant's motion for a judgment of acquittal was granted. In the subsequent civil action, this acquittal was raised as a bar to the action. The court said:

" * * * In the present case the motions for judgment of acquittal raised the question whether the evidence overcame all reasonable doubt of the guilt of appellees.* The ruling on them did not determine whether by the lesser degree of proof required in a civil case appellees might be found to have conspired to fix commissions. The civil action is independent of the criminal cause, Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 52, [33 S.Ct. 9, 57 L.Ed. 107, 118], and is remedial in nature. It has been repeatedly held that though the civil suit is bottomed on the same facts, it is not barred by the prior judgment of acquittal in the criminal case. See Stone v. United States, 167 U.S. 178, [17 S.Ct. 778, 42 L.Ed.

127]; Murphy v. United States, 272 U.S. 630, [47 S.Ct. 218, 71 L.Ed. 446]; Helvering v. Mitchell, 303 U.S. 391, [58 S.Ct. 630, 82 L.Ed. 917], supra." Id. at 493–494, 70 S. Ct. at 716–717. (* Footnote omitted.)

Defendants, however, rely upon the case of United States v. Johns-Manville Corp., D.C., 237 F.Supp. 885, for the proposition that an acquittal in a criminal trial of any violation of the antitrust laws does not entitle the government to another day in court to vindicate the public interest.

Since this case involves a discussion of the issue of threat or probability of resumption of an allegedly illegal practice, treatment of that question will be incorporated into the analysis of the Johns-Manville case.

While on its face the particular holding relied upon by defendants in that case would seem directly to contradict the holding above referred to in United States v. National Assn. of Real Estate Boards, upon careful reading it is evident that the cases can be easily reconciled.

In that case, the allegedly illegal business activity had been terminated prior to the filing of the indictment in the case and the corporate entity seeking summary judgment had completely dissolved, had withdrawn its certificate to do business in all the states of the United States, and was awaiting only final tax clearance. All assets had been sold and it was asserted that the corporation did not intend to ever go back into the business which gave rise to the complaint.

On these facts, the court could not find that there was sufficient danger of recurrent violations to allow the suit to proceed.

Only after this finding did the court consider the effect of the judgment in the criminal case. In that discussion the court relied upon the case of United States v. William S. Gray & Co., D.C., 59 F.Supp. 665, in which a summary judgment in a civil action was granted

after a finding that the company had completely dissolved and that there was no reason to anticipate wrongful acts in the future.

The Johns-Manville court adopted the reasoning of the William S. Gray & Co., case, supra, and on the facts before it found that the government was not entitled to another day in court to vindicate the public interest.

It is apparent that the facts of both of these cases showed clearly that the corporations allegedly engaged at one time in illegal activity were no longer viable business entities and at least in the Johns-Manville case, the acquittal in a previous criminal action was an additional, and not an independent, reason for dismissing the civil action.

Thus, under the authority of United States v. National Assn. of Real Estate Boards, supra, and based on the factual distinctions which will be shown between the instant case and the Johns-Manville and William S. Gray & Co. cases, supra, this court does not view the acquittal in the criminal action in this case as grounds for summary judgment.

■ Turning now to the critical questions in cases of this kind, those of abandonment and probability of resumption, the first consideration must be defendants' contention that since the complaint is limited to alleged activities in the Lower Peninsula of Michigan, and since both defendants no longer carry on operations there, the basis on which any prospective relief could be granted, illegal activity in the Lower Peninsula of Michigan, is lacking. Relief is not so limited in antitrust decrees, nor do defendants correctly apprehend the offense with which they are charged.

The complaint alleges a violation of the antitrust laws, and although the facts set forth are confined to a specific geographic area, the scope of any decree would not be so confined.

"Relief, to be effective, must go beyond the narrow limits of the proven violation." Timken Roller Bearing Co.

v. United States, 341 U.S. 593, 600, 71 S.Ct. 971, 975, 95 L.Ed. 1199, 1207, quoting United States v. United States Gypsum, 340 U.S. 76, 71 S.Ct. 160, 95 L.Ed. 89.

In International Salt Co. v. U. S., 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20, the contention was made that "the injunction should go no farther than the violation or threat of violations." In response to this the court stated that:

"* * * advantages already in hand may be held by methods more subtle and informed, and more difficult to prove, than those which, in the first place, win a market. When the purpose to restrain trade appears from a clear violation of law, *it is not necessary that all of the untraveled roads to that end be left open and that only the worn one be closed.*" Id. at 332 U.S. 400, 68 S.Ct. 17, 92 L.Ed. 28. (Emphasis supplied.)

■ District courts possess wide discretion to fashion decrees to cover the exigencies of the given case. International Salt Co. v. United States, supra; United States v. National Lead Co., supra.

However, the nature of a decree presupposes its necessity, and the necessity for a decree in this case can only be determined after a hearing on the merits.

Defendants are national corporations, operating in many states, and although they have ceased their pulp mill operations in the Lower Peninsula of Michigan, they maintain pulp mill operations at locations in other states. Defendant Hammermill continues to operate its paper mill in Watervliet, Michigan.

Since defendants still maintain thriving operations outside the State of Michigan, it cannot be said on this record, unlike those in United States v. Johns-Manville, supra, and United States v. William S. Gray & Co., supra, that there is no threat or probability of resumption of the alleged illegal activity in those locations. See United States v. Central

States Theater Corp., D.C., 187 F.Supp. 114.

The determination of this question depends fully on a review of the facts at a hearing on the merits. If the evidence discloses that there was in fact no violation in the activities outlined in the complaint, then obviously there is no threat of recurrence.

However, if the evidence discloses that violations did occur, the court must then determine what sort of decree would be suitable in the case.

Assuming for the sake of the motions a previous violation of the Sherman Act, the court finds that there is insufficient evidence to convincingly demonstrate that there is no likelihood of future violations.

Accordingly, the motions for summary judgment are denied.