**UNITED STATES v. 2,180 CASES OF CHAMPAGNE, etc.**

(Circuit Court of Appeals, Second Circuit. January 4, 1926.)

No. 154.

1. **Customs duties** ⬡⟞133—**Intoxicating liquors** ⬡⟞250—**Government not permitted to reply to answer in libel in rem for forfeiture of vessel and liquors, in absence of special order.**

Where libels in rem for forfeiture of vessels and liquor for violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) and Tariff Act of 1922 were promoted in admiralty, government should not be permitted to reply to answer, in absence of a special order.

2. **Customs duties** ⬡⟞133—**Acquittal for violation of National Prohibition Act held res judicata of libel for seizure of vessel and liquor cargo.**

Acquittal of owner of foreign vessel on charge of conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) and Penal Code, § 37 (Comp. St. § 10201), by transporting liquor within territorial waters, with defense that vessel was seeking a harbor of refuge, held res judicata of libels in rem for forfeiture of vessels and liquors for violation of Tariff Act 1922 and Rev. St. § 2806 (Comp. St. § 5503), based on such voyage.

3. **Customs duties** ⬡⟞124—**Intoxicating liquors** ⬡⟞138—**Gift of two cases of liquor beyond 12-mile limit held not violation of National Prohibition Act, or Tariff Act, where no arrangement to set liquor ashore.**

Gift to an American citizen in his own motorboat of two cases of champagne from liquor cargo on foreign vessel beyond 12-mile limit held not violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, 10138¼ et seq.) or Tariff Act 1922, § 592 (Comp. St. Ann. Supp. 1923, § 5841h11), especially where no arrangement was made to get such liquor ashore, notwithstanding that vessel's intent was to introduce prohibited liquor into commerce of United States.

Appeal from the District Court of the United States for the Eastern District of New York.

Forfeiture libels in rem. Proceeding by the United States against 2,180 Cases of Champagne; Hendrick Jan Krans, claimant. Decree for libelant (8 F.[2d] 764), and claimant appeals. Reversed.

See, also, 4 F.(2d) 735, and 8 F.(2d) 763.

The second amended libel, upon which this case was tried, declares upon "a cause of seizure and forfeiture" under the Tariff Act of 1922 (42 Stat. 858) and R. S. § 2806 (Comp. St. § 5503). It alleges the following matters of fact:

On December 7, 1923, a Coast Guard officer duly commissioned seized on board the Dutch schooner Zeehond, about four miles off the shore of Long Island and opposite Fire Island, the intoxicating liquor which constitutes the res herein, which res the persons in charge and custody thereof "were attempting to enter and introduce into the commerce of the United States contrary to law and in fraud of the customs by means of divers false and fraudulent practices against the form of the statute and particularly contrary to section 592 of the Tariff Act of 1922" (Comp. St. Ann. Supp. 1923, § 5841h11).

The goods after seizure were brought ashore and deposited at a place within the Eastern district of New York before libel filed. Said cargo was placed on the Zeehond at a port or ports in Belgium, and she sailed therefrom October 19, 1923, intending to introduce the said liquors without payment of duties into the commerce of the United States, contrary to "the Tariff Act of 1922 and the National Prohibition Act of October 28, 1919" (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

The Zeehond carried no manifest, and one Goeyens (described as a member of the crew of the schooner) "had previously come to the United States by passenger steamer from Belgium and was placed aboard the said schooner while said schooner was lying off the coast of the United States with the purpose and intent of facilitating and arranging for the importation of the aforementioned cargo of intoxicating liquor into the United States."

The Zeehond unloaded *"within twelve miles of the coast of the United States,"* near the Cholera Banks, off the southern coast of Long Island, on or about the 2d to the 5th days of December, 1923, into lighters, a "certain quantity of the cargo of the said intoxicating liquors," which portion was smuggled into the United States and landed there contrary to the said Tariff Act of 1922, said National Prohibition Act, and R. S. § 2806.

Krans, as master of the Zeehond, claimed the cargo as bailee and answered, denying most of the allegations of fact in the libel contained, but admitting that on December 2, 1923, "he permitted two cases of intoxicating liquors to be taken off the Zeehond into a motorboat as a gift to the owner" thereof, but alleged that at the time of said gift both "schooner and motorboat were lying more than four leagues off the nearest coast of the United States."

The answer then set forth a rather different version of the events of December 7, 1923, to the effect that on that day, and at a point

more than three miles from the nearest coast of the United States, the Zeehond was in distress, in that her supply of fresh water was exhausted, her auxiliary motor was useless, her steering gear was not working properly, and her kedge anchor had been lost, wherefore she was making for the port of New York as a harbor of refuge, in order to get water and make repairs; that while so seeking a harbor of refuge the schooner was boarded and vessel and cargo seized by the Coast Guard.

Further answering, the claimant alleged: That prior to the filing of this libel for condemnation and seizure he (Krans), the aforesaid Goeyens, and several other persons of the crew of the Zeehond had been indicted in said District Court for the Eastern District of New York, in that they had conspired (Penal Code, § 37 [Comp. St. § 10201]) to transport and possess within the United States said cargo of intoxicating liquor, contrary to the Code provision and the said National Prohibition Act. That the overt acts set forth in said indictment were:

(1) That Goeyens had preceded the Zeehond to the United States, in order to arrange for the "possessing and transporting of same within the territorial limits of this country and the sale and disposal of same therein contrary to law."

(2) That on or about the 2d or 3d days of December, 1923, the defendants (i. e., the crew of the Zeehond plus Goeyens) had unloaded a certain quantity of said intoxicating liquors into a lighter, which portion had been smuggled into the United States, contrary to the provisions of said National Prohibition Act.

(3) That on December 7, 1923, defendants had brought the Zeehond and its cargo of intoxicating liquor within three miles of the shore of the United States, off Fire Island, and within the jurisdiction of the court, and said defendants had "then and there possessed and transported said cargo of intoxicating liquor contrary to law, and more particularly contrary" to the said National Prohibition Act and said Penal Code, § 37.

And finally claimant answered that he and his codefendants had been duly acquitted of the crime charged.

At trial under this libel, the record of the acquittal of Krans et al. was put in evidence, and from it we learn that the judge presiding ruled that the jury should not consider the first and second alleged overt acts, charging the jury thus:

"You must find beyond a reasonable doubt that an overt act was committed within this district in furtherance of that conspiracy, and the overt act thus charged here is the third overt act. The first and second overt acts need receive no particular consideration at your hands."

We further learn that the occurrences of December 7th were told to the jury at the criminal trial substantially as related in the answer herein, and that a question of fact submitted to the jury was whether or not the finally admitted coming of the Zeehond within the three-mile limit on December 7th was or was not by reason of the "inevitable necessity" of distress so acute as to require entrance into a harbor or refuge.

At trial of this libel it was, we think, clearly enough proven that the Zeehond did start from Belgium with the purpose of "running" her cargo into the United States; that Goeyens did precede the schooner to this country for the purpose of finding a market, and made arrangements with one Leveque to buy at least a considerable portion thereof; that Goeyens employed one Sprague, of Freeport, Long Island, to take Leveque and himself to the Zeehond, then anchored on the Cholera Banks at least 15 miles from the shore of the United States, in order that Leveque might examine his intended purchase.

Sprague made more than one trip to the Zeehond, and on or about December 2d and beyond the 12-mile limit, either Goeyens or Krans presented him with two cases of liquor; but at no other time or place was any liquor taken off the schooner, nor did she at any time approach within 12 miles of the shore of this country, until, solely because of her distressful condition (as her crew swore), she made for a harbor on December 7th, and while for that purpose alone within the territorial waters of the United States was seized by the Coast Guard.

The court below condemned the res; claimant appealed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating, Delbert M. Tibbetts, and Staunton Williams, all of New York City, of counsel), for appellant.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Howard Osterhout, Asst. U. S. Atty., of Mineola, N. Y., of counsel), for the United States.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] One matter of practice requires attention: This cause was promoted in admiralty, and the United States without leave of court replied to the answer. Such pleading is permitted only by special order. Ben. Adm. (5th Ed.) §§ 234 and 343.

The story of the "rum-runner" Zeehond is much simpler than the pleadings. She left Belgium for the purpose of violating or enabling others to violate the laws of this country; she anchored on the Cholera Banks well outside the 12-mile limit, waiting for a market, which market was being sought on shore by Goeyens. At least one customer was found who came to look at the goods, and on or about December 2d the American citizen who brought that customer out was, 15 miles from shore, gratified with a small amount of liquor. The Zeehond, according to the evidence, never went voluntarily within the 12-mile limit, and was seized when seeking a harbor of refuge.

For purposes of decision this history is divisible into two parts: (1) What happened on the Cholera Banks between the 2d and 6th of December; (2) what happened on December 7th within the territorial waters of the United States.

In Coffey v. United States, 116 U. S. 436, 443, 6 S. Ct. 437, 440 (29 L. Ed. 684), it was held:

"Where an issue raised as to the existence of the act or fact denounced has been tried in a criminal proceeding instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person, on the subsequent trial of a suit in rem by the United States, where, as against him, the existence of same act or fact is matter in issue, as a cause for the forfeiture of the property prosecuted in such suit in rem."

More shortly, the doctrine was stated in Stone v. United States, 167 U. S. 178, 186, 17 S. Ct. 778, 781 (42 L. Ed. 127), holding that the judgment in the Coffey Case "was placed distinctly upon the ground that the facts ascertained in the criminal case, as between the United States and the claimant [of the res], could not be 'again litigated between them, as the basis of any statutory punishment denounced as a consequence of the existence of the facts.'"

[2] It is clear that the criminal charge was attempted violation of the Prohibition Act by transporting liquor within territorial waters, and defense was that she was seeking a harbor of refuge. A necessary consequence of acquitting on this charge, after such a defense was a holding in substance that on December 7th the crew of the Zeehond (including appellant) had no criminal intent and were running for refuge, instead of running rum. Under the cases cited (see, also, U. S. v. Salen [D. C.] 244 F. 296, Sierra v. U. S., 233 F. 37, 147 C. C. A. 107, and U. S. v. Gully, 9 F. [2d] 959, 1923 A. M. C. 279), it is impossible for the government to say (as it substantially attempts to do in one portion of this libel),—You may have been running for a harbor of refuge without present intention of violating the Volstead Act, but we will hold you civilly for not having a manifest (R. S. § 2806) and trying to smuggle liquor into the country. It is quite unnecessary to discuss the matter further, the principle is too well known; that it has not always met with approbation in the state courts (People v. Snyder, 90 App. Div. 422, 86 N. Y. S. 415), is unimportant.

It results that so much of this libel as counts on the events of the 7th of December cannot be considered, and it remains but to ascertain the legal effect of what was done between December 2d and 5th on the high seas and 15 miles from the nearest American shore.

What happened was exactly this: An American citizen in his own motorboat came to the Zeehond and got two cases of liquor as a gift; for Goeyens paid him for the ferriage out and back.

It has been held possible for those on board of a vessel lying beyond the limits to violate the various customs regulations, including R. S. § 2806, requiring a manifest. The Henry L. Marshall (C. C. A.) 292 F. 486. But in that case those in charge of the vessel corresponding to the Zeehond made arrangements to put their cargo ashore by means of small boats not belonging to the rum-carrying vessel, but obtained for the purpose of discharging her cargo, and then carried out their purpose.

[3] Nothing of the kind was done here. To call the gift to Sprague an unloading into lighters (as the libel does) is merely untrue. Doubtless what Sprague got was liable to forfeiture, but no arrangement was made with him to get even his two cases ashore. Sprague was at liberty to take the stuff anywhere, or to drink it at sea. Doubtless, if the Zeehond had not become almost unmanageable, Leveque would have made arrangements to do the very thing that was condemned in The Henry L. Marshall; but for the pur-

poses of this case it is enough that nothing of the sort was done.

Reliance on section 592 of the Tariff Act of 1922 fails for substantially the same reasons. That statute denounces in effect any "attempt to enter or introduce into the commerce of the United States any imported merchandise" by "any willful act or omission by means whereof the United States is or may be deprived of the lawful duties" accruing upon such merchandise.

It is sufficient to observe of this statute that there can be no violation until there is an attempted *entry* or *introduction* of merchandise into this country. We think it true that the object of the Zeehond's going to the Cholera Banks was to introduce, or enable others to introduce, prohibited liquor into the commerce of the United States. But certainly one could not be prosecuted for an intention so to do entertained on the other side of the world; and there is no legal difference between China and the Cholera Banks, so far as the intent is concerned. Our laws are territorial (American Banana Co. v. U. S. Fruit Co., 213 U. S. 347, 29 S. Ct. 511, 53 L. Ed. 82), and it is no violation of the National Prohibition Act to either give away or sell liquor on the high seas. Cunard v. Mellon, 262 U. S. 101, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306.

Result is that this claimant and others have been by a jury conclusively found guiltless of all violations of law (here mentioned or relevant) on December 7, 1923, and between December 2 and 5, 1923, this claimant and the cargo of which he was bailee were on the high seas in a Dutch schooner. The libel should have been dismissed.

Decree reversed.