UNITED STATES v. CARGO OF INTOXICATING LIQUOR EX BRITISH SCHOONER PATARA.

No. 2376.

District Court, E. D. New York.
Jan. 11, 1930.

See, also, 40 F.(2d) 72.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for claimants.

Howard W. Ameli, U. S. Atty., and A. D. Smith, Asst. U. S. Atty., both of Brooklyn, N. Y.

CAMPBELL, District Judge.

This is a hearing on exceptions to the libel herein.

The exceptions are filed on behalf of Eugene Folquet and Ernest Folquet, trading as Folquet Freres, and Evelyn Margaret Carline, administratrix, claimants.

It appears from the papers filed heretofore herein that Evelyn Margaret Carline claims to be the administratrix of the estate of Frederick W. Carline, deceased, who claimed to be the owner of the said cargo on the said Patara, and, while it would have been better to set forth her title in full in said exceptions, it would be the highest technicality to overrule the exceptions as to her on any such ground.

As I have found, and again find, that the alleged sale which in effect was an assignment of claim to said cargo, made by Evelyn Margaret Carline, as administratrix of the estate of Frederick W. Carline, deceased, to said Eugene Folquet and Ernest Folquet, trading as Folquet Freres, was void under the provisions of section 3477 of the Revised Statutes, title 31, § 203, U. S. Code (31 USCA § 203), and that such exceptions should be stricken out as to said Eugene Folquet and Ernest Folquet, trading as Folquet Freres, the said exceptions will be stricken out as to them and considered only as the exceptions of the claimant Evelyn Margaret Carline, as administratrix of the estate of Frederick W. Carline, deceased.

The exceptions are as follows:

(1) That the first, second, and third causes of action are insufficient in law and do not allege any legal ground for the forfeiture of the said cargo.

(2) That the first, second, and third causes of action do not allege the violation of any of the statutes referred to in the libel within the territory of the United States.

(3) That the first, second, and third causes of action are insufficient because they show that the said schooner Patara and her cargo were not seized within the United States.

(4) That the first, second, and third causes of action are insufficient in law because they do not show that the said schooner Patara and her cargo were lawfully seized under the provisions of the treaty between the United States and Great Britain.

(5) The court is without jurisdiction of the first, second, and third causes of action because the libel shows that no seizure of said cargo was made within the United States, and the libel fails to allege any seizure of the said cargo, in compliance with the terms of the treaty between the United States and Great Britain.

The libel alleges for a first cause of forfeiture the following:

(1) That the libelant is and was at all the times mentioned a sovereign power.

(2) That the British schooner Patara was owned by Ernst Shipbuilding Company, Limited, Mahone Bay, Nova Scotia; her home port being Lunenburg, Nova Scotia.

(3) That on or about the 24th day of December, 1924, the Patara when at a point on the high seas about 16½ miles off the Long Island Coast, made contact with the shore of the United States by means of the motorboat Dick, and imported into the United States, through the motorboat Dick, 138 cases of alcoholic beverages, contrary to the laws of the United States.

(4) That the distance between the shore of the United States and the Patara, on the date aforesaid, was covered by the motorboat Dick in one hour's sailing time from the shore.

(5) That the 138 cases of alcoholic beverage so imported into the United States by the Patara by means of the motorboat Dick was subject to a tax by the United States, and said tax was not then and there paid.

(6) That the schooner Patara, at the time and place mentioned, was used in the removal, deposit, and concealment of goods, liquors, etc., with intent to defraud the United States of a tax imposed upon such goods when the same are imported into the United States.

(7) That the importation of the 138 cases of liquors by the Dick was with intent to defraud the United States of a tax which is imposed upon intoxicating liquor when the same is imported into the United States.

(8) That the Dick and her cargo was seized upon the date aforesaid by the Coast Guard authorities, and was thereafter duly condemned and forfeited and sold by proceedings under the decree of court.

(9) That on December 24, 1924, the United States Coast Guard cutter Seneca attempted to seize the British schooner Patara, anchored on the high seas 16½ miles from the Long Island Coast, but did not effect seizure until the Patara had arrived at a point 33.6 miles from the Long Island Coast.

(10). That the commander of the Seneca, after boarding the Patara outside of the territorial waters of the United States, made inquiries of those on board, examined the ship's papers, and ascertained that the schooner had imported and was endeavoring to import alcoholic beverages into the United States, in violation of law, and that the cargo of liquors theretofore enumerated in the libel was found on board the Patara.

(11) That the Patara, after being seized by the Seneca, was brought into the port of New York and delivered to the collector of customs, together with the cargo therein enumerated, and that said cargo is now within this district, and within the jurisdiction of this court.

(12) That, by reason of the premises, the Patara had committed and was attempting to commit an offense against the laws of the United States by attempting to import into the United States alcoholic beverages, contrary to the terms of the treaty between the United States and Great Britain, to aid in the prevention of the smuggling of intoxicating liquors into the United States, adopted May 26, 1924, contrary to section 3450, Revised Statutes, section 600 (a) of the Internal Revenue Act of 1924, as amended by section 900, paragraph 3, title 9, of the Revenue Act of 1926, and was therefore subject to seizure and forfeiture by the United States, and that by decree of the District Court of the United States for the District of New Jersey, entered September 30, 1925, a copy of the decree being attached to and made part of the libel, the British schooner Patara was condemned and ordered delivered to the Treasury Department, etc.

(13) That the cargo of intoxicating liquors on the Patara, enumerating them, was intoxicating liquor and alcoholic beverages which contained one-half of 1 per centum or more of alcohol by volume, and fit for beverage purposes, were subject to a tax and were deposited, removed, and concealed in said vessel with intent to defraud the United States of such tax.

(14) Again alleges that by reason of the premises the cargo of the Patara became and is subject to seizure and forfeiture to the United States, pursuant to the provisions of section 3450, Revised Statutes, as enlarged by the provisions of the Liquor Search Treaty between the United States and Great Britain heretofore mentioned, and pursuant to section 600 (a) of the Internal Revenue Act of 1924, as amended by section 900 of the Internal Revenue Act of 1926, paragraph 3, title 9, and schedule 8, paragraph 813, of the Tariff Act of 1922, and for violation of article 2, § 2, of the said treaty.

(15) That this court has jurisdiction.

And the libel alleges, for a second cause of forfeiture, all of the allegations of the first cause of forfeiture which are realleged, and the only difference I observe in the second cause of forfeiture is the allegation that the tax was due and unpaid, and that the cargo was being concealed, deposited, and removed in the Patara, with intent to defraud the United States of such tax, and that, under the provisions of section 3450, Revised Statutes, and the acts amendatory thereof and supplementary thereto (26 USCA § 1181, 1182), the said cargo, enumerating it, became and is subject to forfeiture, and may be libeled therefor.

The libel also alleges, for a third cause of forfeiture, all of the allegations of the first and second causes of forfeiture, and that the said cargo of liquors, enumerating them and the value, entered into the port of New York without the master of said vessel or any other person connected therewith having a permit issued by the Commissioner of Internal Revenue, and that this was in violation of schedule 8, paragraph 813, of the Tariff Act of 1922 (19 USCA § 121, schedule 8, par 813), and that for such violation the said intoxicating liquors may be seized and forfeited to the use of the United States.

Section 3450, Revised Statutes, now title 26, § 1181, U. S. Code (26 USCA § 1181), reads as follows: *"Removing or Concealing Articles with Intent to Defraud United States.* Whenever any goods or commodities for or in respect whereof any tax is or shall be imposed, or any materials, utensils, or vessels proper or intended to be made use of for or in the making of such goods or commodities are removed, or are deposited or concealed in any place, with intent to defraud the United States of such tax, or any part thereof, all such goods and commodities, and all such materials, utensils, and vessels, respectively, shall be forfeited; and in every such case all the casks, vessels, cases, or other packages whatsoever, containing, or which shall have contained, such goods or commodities, respectively, and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited. And every person who removes, deposits, or conceals, or is concerned in removing, depositing, or concealing any goods or commodities for or in respect whereof any tax is or shall be imposed, with intent to defraud the United States of such tax or any part thereof, shall be liable to a fine or penalty of not more than $500."

█ It has no application to imported liquors, but applies only to those produced within the United States. The Squanto (C. C. A.) 13 F.(2d) 548; The Pictonian (C. C. A.) 20 F.(2d) 353.

Section 600 (a) of the Internal Revenue Act of 1918 provides: "That there shall be levied and collected on all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States, except such distilled spirits as are subject to the tax provided in section 604, in lieu of the internal-revenue taxes now imposed thereon by law, a tax of $2.20 (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $6.40) on each proof gallon, or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn, and collected, under the provisions of existing law." 40 Stat. 1105.

Section 900 of the Internal Revenue Act of 1926, paragraph 3, title 9 (26 USCA § 245(3), provides that on and after January 1, 1928, certain taxes shall be levied and collected on all distilled spirits in bond, or that may be hereafter produced or imported into the United States.

This amendment has no application as it was not in force at the time of the seizure which occurred on December 24, 1924; but the act which it amended, section 600(a) of the Internal Revenue Act of 1918, supra, incorrectly alleged in the libel herein as section 600 (a) of the Revenue Act of 1924, was in force, but that act simply fixed a tax upon distilled spirits then in bond, or that might thereafter be produced or imported into the United States.

Schedule 8, paragraph 813, of the Tariff Act of 1922 (19 USCA § 121, Schedule 8, par. 813), as alleged in the libel, provides as follows: "No wines, spirits, or other liquors or articles provided for in this schedule containing one-half of 1 per centum or more of alcohol shall be imported or permitted entry except on a permit issued therefor by the Commissioner of Internal Revenue, and any such wines, spirits, or other liquors or articles imported or brought into the United States without a permit shall be seized and forfeited in the same manner as for other violations of the customs laws."

█ Under the allegations of the libel, I cannot find that the cargo of the Patara came into the United States until it was brought in by the Coast Guard, and therefore no violation of the taxing or permit provision was shown.

Article 2(2) of the Treaty between the United States and Great Britain, adopted May 22, 1924 (43 Stat. 1762) provides as follows: "If there is reasonable cause for belief that the vessel has committed or is committing or attempting to commit an offense against the laws of the United States, its territories or possessions prohibiting the importation of alcoholic beverages, the vessel may be seized and taken into a port of the United States, its territories or possessions for adjudication in accordance with such laws."

█ This treaty does not have the effect of enlarging the territorial limits of this country, nor does it enlarge section 3450 of the Revised Statutes (26 USCA §§ 1181, 1182) or any other laws of the United States; it simply provides that the British government will not, under certain circumstances, object to the search and seizure of a British vessel when within one hour's sailing distance of the shore. The Sagatind (C. C. A.) 11 F. (2d) 673, 45 A. L. R. 1007; The Pictonian, supra.

The Patara, from the allegations of the libel, which as to facts alleged must be taken as true on this hearing, was never less than 16½ miles offshore, and it was no offense for her, a British vessel, to sell or discharge liquors on the high seas, beyond the territory of the United States, Cunard S. S. Company v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306; The Sagatind, supra; the Pictonian, supra; United States v. 2,180 Cases of Champagne (C. C. A.) 9 F.(2d) 710.

Even the acts fixing a 12-mile limit have no application.

Under the facts alleged in the libel, there was no importation as to the cargo on the Patara, because it did not come into the territorial limits of the United States, or even within the 12-mile limit, until it was forcibly brought in by the Coast Guard. The Sagatind, supra.

This leaves but one question open for discussion, and that is the contact doctrine as promulgated in The Grace and Ruby (D. C.) 283 F. 475, and The Henry L. Marshall (C. C. A.) 292 F. 486.

The allegations of the libel, however, are not sufficient, because only the bare conclusion is alleged, that the Patara, when 16½ miles off the Long Island shore, made contact with the shore of the United States by the motorboat Dick, and imported into the United States 138 cases of alcoholic beverages, and that the distance between the shore and the schooner was covered by the motorboat Dick in one hour's sailing time.

There are no facts alleged from which it could be found that anything more than a sale was made to the Dick of liquor 16½ miles offshore, and it does not even appear that the Dick was seized within the territorial limits of the United States, or even within 12 miles from the shore; in fact, the libel does not show where the Dick was seized.

The laws alleged in the libel to have been violated are not the same as in the cases of The Grace and Ruby, supra, and The Henry L. Marshall, supra.

The exceptions to the libel are each and all sustained, but, as the government may be able to allege a good cause or causes of forfeiture, especially under the contact doctrine, the libel will be dismissed, unless the libelant shall file an amended libel within 10 days after service upon the proctor for the libelant of a copy of the order to be entered hereon, leave to file an amended libel being given. Settle order on notice.