UNITED STATES v. ONE OBSCENE BOOK ENTITLED "MARRIED LOVE." Claim of G. P. PUTNAM'S SONS.

District Court, S. D. New York.
April 6, 1931.

822

George Z. Medalie, U. S. Atty., of New York City (Morton Baum, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Greenbaum, Wolff & Ernst, of New York City (Morris L. Ernst and Alexander Lindey, both of New York City, of counsel), for claimant.

WOOLSEY, District Judge.

I dismiss the libel in this case.

■ I. The first point with which I shall deal is as to the contention that the section of the Tariff Act under which this libel was brought, title 19, U. S. C., § 1305 (19 USCA § 1305), is unconstitutional as impinging on the right of the freedom of the press. I think there is nothing in this contention. The section does not involve the suppression of a book before it is published, but the exclusion of an already published book which is sought to be brought into the United States.

After a book is published, its lot in the world is like that of anything else. It must conform to the law and, if it does not, must be subject to the penalties involved in its failure to do so. Laws which are thus disciplinary of publications, whether involving exclusion from the mails or from this country, do not interfere with freedom of the press.

■ II. Passing to the second point, I think that the matter here involved is res adjudicata by reason of the decision hereinafter mentioned.

This is a proceeding in rem against a book entitled "Married Love," written by Dr. Marie C. Stopes and sent from England by the London branch of G. P. Putnam's Sons to their New York office.

The libel was filed under the provisions of Title 19, U. S. C., § 1305 (19 USCA § 1305), which provides, so far as is here relevant, as follows:

"§ 1305. *Immoral Articles—Importation Prohibited.* (a) *Prohibition of importation.* All persons are prohibited from importing into the United States from any foreign country * * * any obscene book, pamphlet, paper, writing, advertisement, circular, print, pictures, drawing, or other representation, figure, or image on or of paper or other material, or any cast, instrument, or. other article which is obscene or immoral, or any drug or medicine or any article whatever for the prevention of conception or for causing unlawful abortion. * * * No such articles, whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles * * * shall be subject to seizure and forfeiture as hereinafter provided: * * * *Provided further,* that the Secretary of the Treasury may, in his discretion, admit the so-called classics or books of recognized and established literary or scientific merit, but may, in his discretion, admit such classics or books only when imported for noncommercial purposes."

Then it goes on:

"Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the collector to await the judgment of the district court as hereinafter provided. * * * Upon the seizure of such book or matter the collector shall transmit information thereof to the district attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

"In any such proceeding any party in interest may upon demand have the facts

at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits."

The book before me now has had stricken from it all matters dealing with contraceptive instruction and, hence, does not come now within the prohibition of the statute against imports for such purposes, even if a book dealing with such matters falls within the provisions of this section—which I think it probably does not—and the case falls to be dealt with entirely on the question of whether the book is obscene or immoral.

Another copy of this same book, without the excision of the passages dealing with contraceptive matters, was before Judge Kirkpatrick, United States District Judge for the Eastern District of Pennsylvania, on a forfeiture libel under the Tariff Act of 1922, and he ruled that the book was not obscene or immoral, and directed a verdict for the claimant.[1]

Although the government took an exception to this ruling at the time of the trial, it did not mature this exception by an appeal, and the case therefore stands as a final decision of a coordinate court in a proceeding in rem involving the same book that we have here. The answer in this case is amended and pleads res adjudicata on the ground of the proceedings had before Judge Kirkpatrick which involved exactly the same question as that now before me.

The only difference between the Philadelphia case and this case is that another copy of the same book has been here seized and libeled.

I think that the proper view of the meaning of the word "book" in title 19, U. S. C., § 1305 (19 USCA § 1305), is not merely a few sheets of paper bound together in cloth or otherwise, but that a book means an assembly or concourse of ideas expressed in words, the subject-matter which is embodied in the book, which is sought to be excluded, and not merely the physical object called a book which can be held in one's hands.

Assuming it is proper so to view the meaning of the word "book" in the statute under consideration, Judge Kirkpatrick's decision at Philadelphia in a proceeding in rem against this book is a bar to another similar proceeding such as this in this district.

I hold that Judge Kirkpatrick's decision

established the book "Married Love" as having an admissible status at any point around the customs' barriers of the United States. In this connection, see Gelston v. Hoyt, 3 Wheat. 246, 312 to page 316, 4 L. Ed. 381; Waples on Proceedings in Rem, §§ 87, 110, 111, 112, and cases therein cited.

It is perfectly obvious, I think, that, if a vessel had been libeled on a certain count for forfeiture at Philadelphia, and there acquitted of liability to forfeiture, on her coming around to New York she could not properly be libeled again on the same count. That is the real situation in the present case. Cf. United States v. 2180 Cases of Champagne, 9 F.(2d) 710, 712, 713 (C. C. A. 2).

III. However, in case the Circuit Court of Appeals, to which I presume this case will eventually be taken, should disagree with my construction of the word "book," and should consider that it was a copy of the book that was subject to exclusion, and not merely the book regarded as an embodiment of ideas, or should disagree with my application of the admiralty law to a situation of this kind, I will now deal with the case on the merits.

In Murray's Oxford English Dictionary the word "obscene" is defined as follows:

"Obscene—1. Offensive to the senses, or to taste or refinement; disgusting, repulsive, filthy, foul, abominable, loathsome. Now somewhat arch.

"2. Offensive to modesty or decency; expressing or suggesting unchaste or lustful ideas; impure, indecent, lewd."

In the same Dictionary the word "immoral" is defined as follows:

"Immoral—The opposite of moral; not moral.

"1. Not consistent with, or not conforming to, moral law or requirement; opposed to or violating morality; morally evil or impure; unprincipled, vicious, dissolute. (Of persons, things, actions, etc.)

"2. Not having a moral nature or character; non-moral."

The book "Married Love" does not, in my opinion, fall within these definitions of the words "obscene" or "immoral" in any respect.

Dr. Stopes treats quite as decently and with as much restraint of the sex relations as did Mrs. Mary Ware Dennett in "The Sex Side of Life, An Explanation for Young People," which was held not to be obscene by the Circuit Court of Appeals for this cir-

---

[1] No opinion was filed.

cuit in United States v. Dennett, 39 F.(2d) 564.

The present book may fairly be said to do for adults what Mrs. Dennett's book does for adolescents.

The Dennett Case, as I read it, teaches that this court must determine, as a matter of law in the first instance, whether the book alleged to be obscene falls in any sense within the definition of that word. If it does, liability to forfeiture becomes a question for the jury under proper instructions. If it does not, the question is one entirely for the court.

"Married Love" is a considered attempt to explain to married people how their mutual sex life may be made happier.

To one who had read Havelock Ellis, as I have, the subject-matter of Dr. Stope's book is not wholly new, but it emphasizes the woman's side of sex questions. It makes also some apparently justified criticisms of the inopportune exercise by the man in the marriage relation of what are often referred to as his conjugal or marital rights, and it pleads with seriousness, and not without some eloquence, for a better understanding by husbands of the physical and emotional side of the sex life of their wives.

I do not find anything exceptionable anywhere in the book, and I cannot imagine a normal mind to which this book would seem to be obscene or immoral within the proper definition of these words or whose sex impulses would be stirred by reading it.

Whether or not the book is scientific in some of its theses is unimportant. It is informative and instructive, and I think that any married folk who read it cannot fail to be benefited by its counsels of perfection and its frank discussion of the frequent difficulties which necessarily arise in the more intimate aspects of married life, for as Professor William G. Sumner used aptly to say in his lectures on the Science of Society at Yale, marriage, in its essence, is a status of antagonistic co-operation.

In such a status, necessarily, centripetal and centrifugal forces are continuously at work, and the measure of its success obviously depends on the extent to which the centripetal forces are predominant.

The book before me here has as its whole thesis the strengthening of the centripetal forces in marriage, and instead of being inhospitably received, it should, I think, be welcomed within our borders.