## UNITED STATES v. ONE BOOK, ENTITLED "CONTRACEPTION," by MARIE C. STOPES.

District Court, S. D. New York.
July 16, 1931.

George Z. Medalie, U. S. Atty., of New York City (Morton Baum, of New York City, of counsel; and Walter R. Eaton, of New York City, solicitor to the Collector of the Port of New York, as amicus curiæ), in support of the motion for a decree of forfeiture.

Greenbaum, Wolff & Ernst, of New York City (Alexander Lindey, of New York City, of counsel), in support of motion for a decree dismissing the libel.

WOOLSEY, District Judge.

The motion to dismiss the libel herein is granted.

The motion for a decree of forfeiture is, consequently, denied.

I. This is a libel in rem brought under title 19, U. S. C., § 1305 (19 USCA § 1305), for the forfeiture of the book "Contraception," written by Dr. Marie C. Stopes, on the ground that it falls within the exclusion of that statute.

II. At the time of the argument the counsel for the respective parties submitted to me a stipulation providing that the book "Contraception" should be deemed annexed as an exhibit to the libel, that the words "by United States mails" should be stricken from article 2 of the libel, that trial by jury, provided for in title 19, U. S. C., § 1305, on forfeiture proceedings thereunder be waived, and that the issues involved herein should be raised and presented before me on a motion by the claimant to dismiss the libel, and by the libelant for a decree of forfeiture thereon.

The provisions of the statute involved, title 19, U. S. C., § 1305, in so far as they are here relevant, are as follows:

"§ 1305. *Immoral Articles—Importation Prohibited.* (a) *Prohibition of importation.* All persons are prohibited from importing into the United States from any foreign country * * . * any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material, or any cast, instrument, or other article which is obscene or immoral, or any drug or medicine or any article whatever for the prevention of conception or for causing unlawful abortion. * * * No such articles, whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles * * * shall be subject to seizure and forfeiture as hereinafter provided: * * * Provided further, That the Secretary of the Treasury may, in his discretion, admit the so-called classics or books of recognized and established literary or scientific merit, but may, in his discretion, admit such classics or books only when imported for non-commercial purposes."

The act further provides for forfeiture proceedings as follows:

"Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the collector to await the judgment of the district court as hereinafter provided. * * * Upon the seizure of such book or matter the collector shall transmit information thereof to the district

attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

"In any such proceeding any party in interest may upon demand have the facts at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits."

III. The contention here made by the claimant that the act just quoted is unconstitutional on the ground that it interferes with the freedom of the press is sufficiently answered by my opinion in the case of United States v. One Obscene Book, entitled "Married Love," 48 F.(2d) 821, 822.

IV. There is not involved here, however, as the claimant urges, and as there was in the case of the book "Married Love," any possible question of res adjudicata, for the book "Contraception," so far as I am aware, is now for the first time libeled in a federal court to test the question of its admissibility under the section of the statutes above quoted.

It is quite true that Judge Kirkpatrick, in the Eastern District of Pennsylvania, had before him on October 30, 1930, in a similar proceeding, three books by this same author, which contained contraceptive information, namely, "Wise Parenthood," "The First Five Thousand," and an edition of "Married Love" which had not been expurgated in that regard, as was the edition before me in the case above mentioned, and that he directed the jury to return a verdict for the defendant on the ground that the said three books were not obscene and that they did not fall within the prohibition, as to contraceptives, contained in the section of the Tariff Act in question here.

But Judge Kirkpatrick's decision involved merely a construction of the statute, not a ruling on the book "Contraception" now before me and, hence, is of nothing more than persuasive value in this case.

V. I find myself, however, entirely in accord with Judge Kirkpatrick's views as to the construction of the section of the statutes under which this libel is brought.

He said in this connection[1]: "I think that under the Tariff Act under which these books are libelled the only question is whether the books are obscene. I do not think the question of whether they contain birth control information is material under this act. It might be under a prosecution for using the mails, but this is a question of importing. So far as birth control matter goes the act prohibits only the importation of drugs, medicine, or other articles for the prevention of conception or causing unlawful abortions. These books are, of course, not drugs, medicines, or other articles for that purpose, and therefore the only question remaining is whether the books are obscene."

VI. In Murray's Oxford English Dictionary the word "obscene" is defined as follows:

"Obscene—1. Offensive to the senses, or to taste or refinement; disgusting, repulsive, filthy, foul, abominable, loathsome. Now somewhat arch.

"2. Offensive to modesty or decency; expressing or suggesting unchaste or lustful ideas; impure, indecent, lewd."

In the same dictionary the word "immoral" is defined as follows:

"Immoral—The opposite of moral; not moral.

"1. Not consistent with, or not conforming to, moral law or requirement; opposed to or violating morality; morally evil or impure; unprincipled, vicious, dissolute. (Of persons, things, actions, etc.)

"2. Not having a moral nature or character; non-moral."

I have read "Contraception," and I find that it does not fall, in any respect, within these definitions of the words "obscene" or "immoral."

"Contraception" is written primarily for the medical profession. It is stated, in an introduction written by an eminent English doctor, to be the first book dealing fully with its subject-matter—the theory, history, and practice of birth control. It is a scientific book written with obvious seriousness and with great decency, and it gives information to the medical profession regarding the operation of birth control clinics and the instruction necessary to be given at such clinics to women who resort thereto. It tells of the

---

[1] Remarks on direction of verdict. No opinion filed.

devices used, now and in the past, to prevent conception, and expresses opinions as to those which are preferable from the point of view of efficiency and of the health of the user.

Such a book, although it may run counter to the views of many persons who disagree entirely with the theory underlying birth control, certainly does not fall within the test of obscenity or immorality laid down by me in the case of United States v. One Obscene Book, Entitled "Married Love," 48 F. (2d) 821, at page 824, for the reading of it would not stir the sex impulses of any person with a normal mind.

Actually the emotions aroused by the book are merely feelings of sympathy and pity, evoked by the many cases instanced in it of the sufferings of married women due to ignorance of its teachings. This, I believe, will be the inevitable effect of reading it on all persons of sensibility unless by their prejudices the information it contains is tabooed.

VI. It follows that as "Contraception" is not an obscene or immoral book, and, obviously, is not a drug, medicine, or an article for the prevention of conception within the meaning of title 19, U. S. C., § 1305, it may be imported into the United States and the libel brought in this case to test that question must be dismissed.

Settle decree on two days' notice.