**UNITED STATES of America,**
**Libelant,**

v.

**18 PACKAGES OF MAGAZINES,**
**Respondents.**

**No. 41194.**

United States District Court
N. D. California, S. D.

June 7, 1963.

On Reconsideration July 29, 1963.

Supplemental Memorandum Nov. 1, 1963.

Further Memorandum Dec. 4, 1963.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., for libelant.

Marshall Krause, San Francisco, Cal., for respondents.

SWEIGERT, District Judge.

This is a libel in rem brought by the United States pursuant to Title 28, U.S. C. Secs. 1355, 1356 and 1395(b), to forfeit 18 packages of magazines alleged to have been seized by the Collector of Customs at San Francisco after the packages had been imported into the United States in violation of Title 19 U.S.C. Sec. 1305.

The libel alleges that each package contains one or more of certain named obscene magazines: Ogat, Visuell, Minuit Cinq, Paris Broadway, Evocations, Figure and Mini Croquis, together with other magazines enclosed within the same package.

One Dr. Earl Sass, as owner of the material has filed a claim herein for their

return and possession, particularly for the return and possession of all magazines which are not alleged in the libel to be obscene.

Exhibit A to the libel identifies each package by a Customs Seizure number affixed thereto and, where two or more packages bear the same Customs Seizure number, by a package number marked on the package. The exhibit further sets forth the approximate quantity of magazines comprising each package with the titles of the magazines in the package.

In the category not alleged to be obscene are 30 magazine titles including the following: Silhuett, Paris Cocktail, Piff, Quick, El Dorado, Modelstudier, Afrodit, Lotus, Nye Store Album Studio, Susie, Venus, Figure Album Eldorado, El Dorado Samling, Tidlosa, Formen & Linien, Album Model Studier, Album Model Studier Samling, Nouvelle Serie de Studio, Nouvelle Serie de Revue, Atelier, Helios Swedish Croquis, Vitus, Scandanavian Croquis, Fimberts, Revue, Marilyn.

Claimant, Sass, has also filed exceptions to the libel under F.R.Civ.P. Rule 12(e) asserting that the libel is deficient in that it does not state in what portions, respects and particulars the magazines are obscene, whether pictures, words or combinations of words and pictures.

We consider first the claim of Sass, for return and possession of the magazines which are not alleged to be obscene.

Title 19, U.S.C. Sec. 1305, so far as applicable to this case, provides that all persons are prohibited from importing into the United States from any foreign country any book, pamphlet, paper, picture, drawing or other representation which is obscene or immoral and, further, that:

"No such articles whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry."

The section further provides:

"[A]ll such articles and, unless it appears to the satisfaction of the collector that the obscene or other prohibited articles contained in the package were enclosed therein without the knowledge or consent of the importer, owner, agent or consignee, the entire contents of the package in which such articles are contained, shall be subject to seizure and forfeiture as hereinafter provided."

The United States takes the position that under these provisions of Section 1305 it may seize and forfeit nonobscene material if it is found in the same package with seizable obscene material.

Although this statute has been in effect for 33 years the question thus raised has not been passed upon by the Courts and is, as far as counsel and this Court can ascertain, a question of first impression.

This Court, however, is of the opinion that Section 1305, read and construed as a whole, does not authorize the forfeiture of any book or matter found by the Court to be non-obscene but, on the contrary, requires that, upon adjudication that such book or matter is not obscene, it must be admitted to entry under the Section.

Although Section 1305 provides that no such obscene articles, whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry, this language is directed to, and applicable only to, the obscene articles—not to any non-obscene articles.

The further provision of the Section that the entire contents of the package in which such articles are contained shall be "subject to forfeiture" is qualified by the language "as hereinafter provided."

The Section then goes on to provide that upon the appearance of any such book or matter at any Customs Office the same shall be seized and held by the Collector to await the judgment of the District Court "as hereinafter provided."

The Section then goes on to provide that "Upon the adjudication (by the United States District Court) that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and it shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which

is by this section prohibited, it shall not be excluded from entry under the provisions of this section."

This last quoted language clarifies beyond doubt the intention of Congress to clearly differentiate between obscene and non-obscene books and material so far as ultimate forfeiture is concerned. Books or matter which, although seized, are not obscene are not "of the character the entry of which is by this section prohibited" and, therefore, are not to be excluded from entry.

■■ No canon of judicial construction is more widely recognized and applied than that such construction must be reasonable in the light of the evident purpose of the statute. The evident purpose of this statute is to suppress obscene literature. (See: United States v. One Package, 86 F.2d 737, 739 (2d Cir. 1936)). The Court is of the opinion that its foregoing construction of Section 1305 is consistent with and adequate for the accomplishment of that purpose.

There is nothing in the section, read as a whole, to suggest that the Congress intended to suppress the entry of, and to destroy, non-obscene books or material merely because they are found in packages with obscene but separable books or material.

The Congressional debates upon this section, which originated as an amendment on the floor to pending Customs legislation, make it clear that Congress was concerned solely with the entry of obscene as distinguished from non-obscene literature and, intended that upon a determination that a book does not come within the purview of the section it would follow as a matter of course that the book would be admitted. 72 Cong. Rec. 5518 (1930). (remarks of Senator Johnson). The legislative history reveals Congressional concern that the determination of obscenity was to be left to the courts, not to a customs official. Id. at 5517-18. (remarks of Mr. Justice, then Senator, Black and Senator Shortridge).

The only concern of Congress which we can infer from the statutory scheme of Section 1305 is that obscene books and material should not escape seizure by Customs in the first instance merely because they might be packaged with innocent books or material and the further concern that the Customs should not in such circumstances be placed in the position of having to make the distinction and the separation on the spot.

The foregoing construction of the statute is consistent with and adequate for that purpose because it recognizes that the entire contents of any such mixed packages is subject to seizure and holding by Customs "to await the judgment of the District Court as hereinafter provided."

At the hearing upon the pending claim and exceptions and in its brief, the United States has argued that Congress intended to penalize an importer of obscene material by subjecting his innocent material to denial of entry and to destruction along with the obscene material.

The Court, however, finding no indication in the statute of any such Congressional purpose, cannot read it into the statute. To construe the statute otherwise would raise serious question concerning its constitutionality under the freedom of speech clause of the First Amendment and the due process clause of the Fifth Amendment.

■ Our foregoing construction of the statute, which obviates these constitutional questions, is in accord with the further canon of statutory interpretation that construction consistent with constitutionality is preferable to construction under which a statute's constitutionality would be in doubt.

It may be that even under our construction of the statute a constitutional question may remain concerning whether the Congress may grant to Customs even a limited authorization to seize and hold admittedly non-obscene books or material pending adjudication, if knowingly packaged with obscene material.

■ However, such question need not be decided because we have concluded that under our construction of the statute claimant is entitled to immediate possession and return of such magazines as are

not alleged by the United States to be obscene.

■ As already noted, the libel herein contains no allegation that thirty magazine titles contain obscene material. In effect the libel concedes that those particular magazines are not obscene. If they are not obscene, they come within the protection of the freedom of speech clause of the First Amendment and may not be subjected to a prior restraint under any statute or regulation designed to prevent the distribution of obscene matter, unless such statute provides adequate procedures for a prompt judicial determination of the validity of the restraint. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Marcus v. Search Warrant, 367 U.S. 717, 731–732, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1960); see Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1956).

Further, the statute, as noted, specifically conditions the seizure of an entire package, including non-obscene literature, upon a determination by the collector that the obscene matters were enclosed with the knowledge or consent of the importer, owner, agent or consignee. The present libel does not allege that obscene magazines were enclosed in the package with such knowledge or consent.

The pending forfeiture proceeding is the only proceeding wherein a determination can be made concerning the magazines now under seizure. Section 28 U.S. C. § 2463 provides that all property taken or detained under any revenue law of the United States shall not be reprievable, but shall be deemed to be in the custody of the law and subject only to the orders and decrees of the Courts of the United States having jurisdiction thereof.

■ This proceeding vests this Court with exclusive jurisdiction to make such a determination concerning this material and, further, parties in interest are entitled to a prompt determination. Upham v. Dill, 195 F.Supp. 5 (S.D.N.Y.1961).

· The United States, having had ample time to charge any and all of the books in question as obscene and not having

done so with respect to certain thereof, is, therefore, ordered to immediately surrender and return herein any and all magazines now under seizure except those titled Ogat, Visuell, Minuit Cinq, Paris Broadway, Evocations and Mini Croquis.

■ Concerning claimant's exceptions to the libel, said exceptions are overruled. We believe that the government should not be required to specify in the manner stated in the exceptions because the issue of obscenity is to be determined by an examination of the magazines in question as a whole, in their entire context. Roth v. United States, supra, 354 U.S. at 490, 77 S.Ct. at 1312, 1 L.Ed.2d 1498.

ON RECONSIDERATION

Upon application of the libelant, United States, the Court consented to reconsider the views expressed in its memorandum of decision dated and filed herein on June 7, 1963, and to stay any order made or directed therein.

· The Court has heard further oral argument, considered additional briefs and has further reviewed the legislative history, language and purpose of Title 19 U.S.C. Sec. 1305 and files this memorandum of decision to supplement its previous memorandum wherein the record and issues before the Court are set forth.

The Tariff Act of 1842, 5 Stat. 566, expressly prohibited the importation of indecent or obscene prints, etc., and, further, expressly provided that no package whatever, or *any part thereof*, in which any such articles are contained, *shall be admitted to entry* and, further, that all packages whereof any such articles shall comprise a part, are liable to be proceeded against, seized and forfeited, by due course of law, and the said article *shall be* forthwith *destroyed*.

The Tariff Act of 1842, as amended in 1857, 11 Stat. 168, retained the above provision in substantially similar form.

It will be noted that the above language literally ·and expressly prohibits the admission to entry into the United States, and requires the destruction, not only of the obscene matter, but of the entire package of which obscene matter comprises a part.

That such a construction was assumed in two early cases (United States v. One Case Stereoscopic Slides, 27 Fed.Cas. 255, 1857, applying the above statute of 1857; United States v. Three Cases of Toys, 28 Fed.Cas. 112, 1843, applying the above Act of 1842) is quite understandable in view of the above provision.

The Tariff Act of 1913, 38 Stat. 194, significantly eliminates the above language and substitutes language which seems clearly designed to limit the entry prohibition to the obscene articles only.

This 1913 statute Sec. G(1), after prohibiting the importation of obscene articles, then says that "[n]o *such articles*, whether imported separately or contained in packages with *other goods entitled to entry*, shall be admitted to entry" and, further, that "all *such articles* shall be proceeded against, seized, and forfeited by due course of law," and, further, that "[a]ll such prohibited articles *and* the package in which they are contained in the course of importation shall be *detained* by the officer of customs, and proceedings taken against the same as hereinafter prescribed, unless it appears to the satisfaction of the collector of customs that the obscene articles contained in the package were enclosed therein without the knowledge or consent of the importer * * *."

The "proceedings thereafter described" were merely (Sec. G(3)) the issuance of a court warrant of seizure of any article in violation of Sec. G(1) to the end that the same may be condemned and destroyed by judicial proceedings.

This same section was carried into the Tariff Act of 1922, 42 Stat. 936 as Sec. 305(a).

We find it difficult to construe this language of the 1913 and 1922 Acts as permitting anything more than the seizure and detention of non-obscene matter—packaged with obscene matter pending adjudication—not its ultimate forfeiture and destruction along with prohibited obscene articles.

In 1930 the foregoing Sec. 305(a) was superceded by Sec. 305 of the Tariff Act of 1930, comprising the present Title 19 U.S.C. Sec. 1305.

This new and present section, after prohibiting the importation of any obscene book, (as did the predecessor 1913 and 1922 statutes) provides identically with the predecessor 1913 and 1922 statutes that no such article, whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry and, further, (the language now changes in form) that "all such articles and, unless it appears to the satisfaction of the collector that the obscene or other prohibited articles contained in the package were enclosed therein without the knowledge or consent of the importer, owner, agent, or consignee, the entire contents of the package in which such articles are contained, shall be subject to seizure and forfeiture as hereinafter provided" and, further, (now adding further new language) that "[u]pon the appearance of any such book or matter, at any customs office the same shall be seized and held by the collector to await the judgment of the district court as hereinafter provided. * * * *"

The section then continues with added new language—language added by a floor amendment of the section while under Senate consideration on March 18, 1930: "Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized *is not* of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section."

At the time of the addition of this last quoted new language the following colloquy occurred—Congressional Record, Vol. 72, Part 5, 71st Congress, 2d Sess. p. 5518:

"MR. BRATTON. Mr. President, if disposition can be made of the pending amendment, I have one to follow.

"THE VICE PRESIDENT. The amendment offered by the Senator from New Mexico will be stated.

"THE LEGISLATIVE CLERK. On Page 3 of the amendment, in line 19, after the period, it is proposed to insert:

"'Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.'

"THE VICE PRESIDENT. The question is on agreeing to the amendment offered by the Senator from New Mexico to the amendment offered by the Senator from Utah.

"MR. JOHNSON. Mr. President, may I inquire of my friend from New Mexico is not that the obvious consequence?

"MR. BRATTON. I fear not. Other provisions of a general nature in the law may counter with such provisions in this section. The amendment is intended to complete the section and to set up a completed machinery so far as dealing with books of this character which are imported are concerned.

"MR. JOHNSON. I have not the slightest objection to the amendment to the amendment, but it seems to me that if there is a determination that the book does not come within the purview of the section it follows as a matter, of course, that it can come in.

"MR. BRATTON. The section, however, provides for confiscation. It may not give the right to take it out of the hand of the customs collector once he has acquired possession of it, and the amendment merely provides, when the question has been adjudicated that the book or material does not fall under the ban of this particular section, it shall not thereafter be excluded on account of this section.

"MR. SMOOT. Mr. President, I do not think the amendment is necessary, but I see no objection to having it go in.

"THE VICE PRESIDENT. The question is on agreeing to the amendment offered by the Senator from New Mexico to the amendment offered by the Senator from Utah.

"The amendment to the amendment was agreed to."

The government stresses the language: "the entire contents of the package in which such articles are contained, shall be subject to seizure and forfeiture as hereinafter provided."

However, it is not necessary to accept the government's construction of the statute in order to understand the meaning and practical purpose of this particular language in the statutory scheme.

█ We agree that the entire contents of a package in which obscene articles are contained become "subject to seizure and forfeiture". Customs officers, finding one or more obscene articles in a package, may under the statute seize the entire contents of the package without need of checking all or any other articles in the package for obscenity, (unless the customs officials are satisfied that any other articles in the package were enclosed without the knowledge or consent of the importer.)

Further, the entire contents thus seized becomes "subject to * * * forfeiture" in the sense that any of the other contents of the seized package remain subject to forfeiture if ultimately found and adjudicated to be also obscene.

Without this provision, customs officers, finding an obscene article in a package, would be required in all cases to check each and every other article in the package before seizing the package—a segregation on the spot which the Congress very properly desired to avoid in cases where the entire contents were evidently enclosed with the knowledge and consent of the importer.

Further, this particular language of the statute is qualified by the phrase "as hereinafter provided" and, therefore, must be read in connection with what is thereafter provided in the section.

Further, there is nothing in the 1930 Congressional debate which indicates that

Congress intended to broaden the provisions of the 1913 and 1922 Acts in this particular or to revert to the deliberate, express provision for complete forfeiture spelled out in the earlier 1842 statute— a policy provision which apparently had been rejected by the Congressional changes made in 1913.

On the contrary, the debate on the 1930 statute indicates an intent to make sure that no seized book ultimately adjudicated by the Court to be "not of the character the entry of which is by the section prohibited" i. e., not obscene, would be excluded from entry and that only books adjudicated to be of such character, i. e. obscene, would be, not only excluded from entry, but destroyed.

The government argues that in construing this language ("is [or "is not"] of the character the entry of which is by this section *prohibited*") the word "prohibited" should be construed to include prohibition of a book or matter which, although not ultimately found and adjudicated to be obscene, was seized under the section as part of the contents of a package containing obscene books or matter.

However, the language just does not lend itself to such a construction. The word "prohibited" is related to books or matter "the entry of which is by this section prohibited". The preceding portion of the section, dealing with what shall not be "admitted to entry" is, as already noted, clearly limited to "obscene" books.

■■■■ Where, as in this case, a statute can be reasonably understood and construed in a manner that will accomplish its evident scheme and purpose, such construction should not be strained further to read into the statute a vaguely, arguable intent to create what the government admits could be only in the nature of a penalty against the importer rather than a confiscation of obscenity. An intent to create a penalty should not be lightly nor, in this case, unnecessarily implied, especially when such penalty

might subject the statute to serious constitutional question.

It has been held that the section in its present form is not unconstitutional as interfering with freedom of the press. United States v. One Book, etc., 51 F.2d 525 (S.D.N.Y.1931); United States v. One Obscene Book, etc., 48 F.2d 821 (S.D.N.Y.1931).

The specific question here presented was not involved in those cases. The opinions, however, did set forth in haec verba, the whole section in its present form, including the language pertinent here, but the courts briefly upheld validity without qualification or any comment upon the possibility that innocent as well as obscene articles might be forfeited.

In the present case the tentative determination of Customs that at least one article in each package is obscene justified the seizure and subjection to forfeiture of the entire contents of each package. The United States Attorney is charged with the duty of instituting these forfeiture proceedings and might have charged the entire contents of each package as obscene, including such as might not have been checked by Customs, and in that case such articles as charged would, of course, be further held pending adjudication. In this case, however, the United States Attorney concedes that certain of the contents of each seized package are not obscene. There is, therefore, no reason for deferring adjudication as to such articles. On this record the adjudication may be made upon respondent's application for return thereof.

For the foregoing reasons the Court concludes that there is no reason for changing the views expressed in the Court's previous memorandum of June 7, 1963.

Accordingly, claimant herein shall prepare, serve and present an order in accordance with these memoranda.

SUPPLEMENTAL MEMORANDUM

The Court having consented to reconsider its previous memoranda filed herein on June 7, 1963 and July 29, 1963, has

reached the following conclusion for the following reasons:

The libelant, United States, has called our attention to the fact that by an amendment of 1890 the predecessor statute of Title 19 U.S.C. Sec. 1305, was amended (26 Stat. 614) by inserting for the first time a provision for relief from forfeiture in cases where the importer was innocent of any intention to violate the law and that a Report of the House Committee on Ways and Means then stated the purpose of this amendment as follows:

"\* \* \* As the law now stands the provision for the forfeiture of obscene articles \* \* \* includes the forfeiture of all articles enclosed in the same package \* \* \*. This occasions hardship in numerous cases where shippers, without the knowledge of the importer, enclose in the same package with lawful articles ordered of them, books or other articles, often of trifling value, in violation of law \* \* \*. It is recommended, therefore, that the law be so amended as to provide for the entry and delivery \* \* \* of proper articles although covered by the same invoice and enclosed in the same package with forfeitable articles, wherever it is shown to the satisfaction of the Secretary of the Treasury that the importer is innocent of any intention to violate the law."

In our previous supplemental memorandum filed July 29, 1963, we conceded that the predecessor statute, as it stood prior to 1890 and thereafter until 1913, *did* literally and expressly prohibit the admission to entry into the United States, and required the destruction of, not only obscene matter, but also of the entire package of which the obscene matter comprised a part.

We consider, therefore, that the 1890 Committee Report above noted, correctly stated the all inclusive scope of the statute as it stood in 1890 and the necessity and purpose of the so-called "innocent importer" amendment.

However, we also pointed out that later, in 1913, (38 Stat. 194) the form of the statute was changed in a manner which, while retaining the "innocent importer" provision, seems clearly designed to limit the entry prohibition to obscene articles only and, although providing for the *seizure* and *detention* pending adjudication of non-obscene matter which was packaged with obscene matter, to no longer require the ultimate forfeiture and destruction of the latter. We then traced the statute, as amended in 1913, to further amendment in 1930.

Therefore, the legislative history concerning the 1890 amendment does not require a change of the views already expressed concerning the reasonable and proper construction to be given Sec. 1305.

Therefore, it is hereby ordered that libelant, United States, and the Collector of Customs thereof, be and appear before this Court on the 20th day of November, 1963, 10 A.M., to show cause why they should not be ordered to deliver forthwith to petitioner herein, Dr. Earl Sass, all magazines seized herein and held and libelled under the provisions of Title 19, Sec. 1305 U.S.C.—except those magazines entitled Ogat, Visuell, Minuit Cinq, Paris Broadway, Evocations, Figure and Mini Croquis.

## FURTHER MEMORANDUM

On November 27, 1963, responding to the Order to Show Cause issued and dated October 31, 1963, appeared the United States Attorney and the Collector of Customs and also claimant herein and his counsel.

At the hearing further discussion of the legislative history of Title 19 U.S.C. Sec. 1305 developed that the significant recasting and change of the statute (referred to by the Court in its Supplemental Memorandum of July 29, 1963 [pp. 1–2] and in its Supplemental Memorandum of October 31, 1963, [p. 2]), occurred, not in 1913, as previously indicated by the Court, but in 1890 (Tariff Act of 1890, Sec. 11, Ch. 1244, 26 Stat. 614–615 (1890)).

In other words, this 1890 statute not only introduced into the statute for the first time the so-called "innocent owner"

provision but also significantly changed the statute from the earlier form in which it had stood from 1842 (2 Stat. 566) through 1857 (11 Stat. 168) and through 1883 (22 Stat. 489).

As previously noted by the Court this earlier form of the statute, after prohibiting importation of obscene books, did literally and expressly provide that "[n]o invoice or *package* whatever, or any part of one, in which any such articles are contained shall be admitted to entry; and all invoices and *packages* whereof any such articles shall compose a part are liable to be proceeded against, seized and forfeited by due course of law. All *such prohibited articles* in the course of importation shall be detained by the officer of customs, and proceedings taken against the same as prescribed in the following section * * *." (Sec. 2491, Ch. 121, 22 Stat. 489–490 (1883). (emphasis added).

This earlier form of the statute was changed by Sec. 11, Ch. 1244, 26 Stats. 614, 615 (1890) to read, after prohibiting importation of obscene books, as follows: "* * * No such *articles,* whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all *such articles* shall be proceeded against, seized, and forfeited by due course of law. All such prohibited articles and the package in which they are contained in the course of importation shall be *detained* by the officer of customs, and proceedings taken against the same as prescribed in the following section, *unless* it appears to the satisfaction of the collector of customs that the obscene articles contained in the package were inclosed therein without the knowledge or consent of the importer * * *." (emphasis added)

It will be noted that the pre 1890 form of the statute was broadly drawn to make not only the prohibited obscene article, but also the *package* containing them, *inadmissible to entry* in the United States.

This was the situation when an 1890 report of a House Committee on Ways and Means stated that "As the law now stands the provision for the forfeiture of obscene articles * * * includes the forfeiture of all articles enclosed in the same package * * *. This occasions hardship in numerous cases where shippers, without knowledge of the importer, enclose in the same package with lawful articles ordered of them, books or other articles, often of trifling value, in violation of law * * *. It is recommended, therefore, that the law be so amended as to provide for the entry and delivery * * * of proper articles, although covered by the same invoice and enclosed in the same package with forfeitable articles, whenever it is shown to the satisfaction of the Secretary of the Treasury that the importer is innocent of any intention to violate the law".

However, the statute as finally recast by the Congress in 1890 adopted language which made only the prohibited *articles* (not the package) *inadmissible* to *entry* in the United States. It merely further provided that *such* prohibited articles and the *package* in which they are contained shall be *detained* by customs pending proceedings unless (as to the package, itself, and non-prohibited articles therein) the collector finds that the obscene articles in the package were placed therein without the knowledge or consent of the importer. In this latter case (i. e. such a finding by the collector on the spot) as we read the statute, the package, and such non-prohibited articles as might be in it, would not even be detained by the collector pending proceedings.

That this so-called "innocent owner" proviso related only to the package and such non-prohibited articles as might be in it, not the prohibited, obscene articles, is obvious and, as construed, it merely qualifies the right which the collector would have in the absence of such a finding to detain the whole package pending proceedings.

This language of the 1890 recast should not be strained to require or permit an ultimate forfeiture and destruction of the package, as such, (or such innocent articles as might be in it) merely because the collector, not making an on the spot

"innocent owner" finding, *detains* the whole package pending proceedings. This is especially clear because the Congress had just changed the statute to limit inadmissibility to entry only to the prohibited, obscene articles—removing the earlier, broader ban upon the whole package itself.

As pointed out in our first Memorandum of June 7, 1963 and more particularly in our second Memorandum of July 29, 1963, this construction of the statute, as it now stands (Title 19 U.S.C. Sec. 1305), is further strengthened, if not compelled, by the further recast of the statute in 1930 (46 Stat. 688) when there was added the provision that "Upon adjudication" (by the Court) "that such book or matter thus seized is *not* of the character the entry of which is by this section prohibited, it shall *not* be excluded from entry under the provisions of this section."

Clearly then, if an article is *not of 'the character*, i. e., obscene, the entry of which is prohibited, it shall not be excluded—certainly not ultimately forfeited or destroyed. As already noted, the package, as such (and innocent articles therein contained) were removed from the earlier ban on entry by the 1890 recast.

Several rehearings, granted for the purpose of giving the government ample opportunity to present the legislative history of Sec. 1305, confirms, rather than weakens the views expressed by the Court in its original Memorandum of June 7, 1963, concerning the proper construction of the statute, namely, that it should not and need not be construed as imposing an ultimate penalty of forfeiture and destruction upon admittedly innocent, non-prohibited articles otherwise entitled to entry merely because they were contained in a package with obscene, prohibited articles of the character banned from entry—notwithstanding that the package and its innocent articles have been *detained* by customs pending Court proceedings as permitted under certain circumstances by the statute.

Further, we repeat the admittedly technical observation made in our original Memorandum that the government's Libel contains no allegation that the Collector of Customs made any finding one way or the other, as to whether the innocent books here involved were placed in the packages with or without the knowledge or consent of the claimant-importer.

For the reasons stated in this and the three previous memoranda of the Court, it is ordered that the United States District Attorney, the Marshal of this Court and the Collector of Customs, now return and deliver to the claimant-importer any and all of the books or magazines now under detention and seizure (except those alleged to be obscene, towit, Ogat, Visuell, Minuit Cinq, Paris Broadway, Evocations, Figure and Mini Croquis) provided only that the importer-claimant comply with such other provisions of the customs laws as impose functions or duties upon the Collector of Customs concerning such delivery.